**UNITED STATES of America**

v.

**John GOTTI, et al., Defendants.**

**No. 85 CR 178.**

United States District Court, E.D. New York.

July 17, 1986.

Andrew J. Maloney, U.S. Atty. (Diane F. Giacalone, John Gleeson, Asst. U.S. Attys., of counsel), Brooklyn, N.Y., for U.S.

Slotnick & Cutler (Bruce Cutler, of counsel), New York City, for defendant John Gotti.

Slotnick & Cutler (Barry I. Slotnick, of counsel), New York City, for defendant John Carneglia.

Hoffman, Pollok & Gasthalter, (Jeffrey C. Hoffman, of counsel), New York City, for defendant Eugene Gotti.

Richard A. Rehbock, New York City, for defendant Wilfred Johnson.

David DePetris, New York City, for defendant Anthony Rampino.

Michael L. Santangelo, Susan Kellman, New York City, for defendant Leonard Di-Maria.

George Santangelo, New York City, for defendant Nicholas Corozzo.

NICKERSON, District Judge.

Defendants apply to preclude the admission of certain evidence that the government proposes to offer.

The indictment charges so-called RICO violations in two counts. The first alleges, in substance, that defendants as the leadership of a part of the "Gambino Crime Family" constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and conspired, in violation of 18 U.S.C. § 1962(d), to associate together in the enterprise and to conduct its affairs through "a pattern of racketeering activity" consisting of theft, the conduct of illegal gambling businesses, extortion, robbery, trafficking in contraband cigarettes, and acts and threats of murder and robbery.

The second count charges that each defendant violated 18 U.S.C. § 1962(c) by participating in the conduct of the affairs of the enterprise through a "pattern of racketeering activity." The count alleges fifteen racketeering acts, in at least two of which each defendant is said to have participated.

The alleged racketeering acts committed by the seven defendants remaining in the case may be summarized as follows. Two of the defendants are accused of theft of goods from interstate commerce, one of illegal possession of goods stolen from interstate commerce, three of murder or conspiracy to murder, six of the conduct of illegal gambling businesses, three of conspiracies to rob currency from armored cars, five of conspiracies to commit extortion, one of theft under state law, and one of illegal possession of contraband and stolen cigarettes.

1. The government proposes to offer pursuant to Rule 804(b)(5) of the Federal Rules of Evidence statements by Albert Gelb, one of the murder victims, to ten prospective witnesses. Gelb, a court officer, allegedly caused the arrest of Charles Carneglia for possession of a weapon. Charles Carneglia, a named defendant, is a fugitive and the brother of defendant John Carneglia. Charles was charged in the state court with possession of a weapon and resisting arrest. On March 11, 1976, shortly before the state trial, Gelb was murdered. Before he was killed Gelb allegedly stated to several of his acquaintances that Charles and friends and associates of Charles had threatened him with injury or death if he testified against Charles.

The indictment charges defendant John, Charles' brother, with the murder of Gelb as a part of the conduct of the affairs of the enterprise.

Subsection (b)(5) of Rule 804 provides an exception to the exclusion of hearsay evidence when the declarant is unavailable. The subsection reads, in pertinent part, as follows:

(5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthi-

ness [is not excluded by the hearsay rule], if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

To qualify for admission under this so-called "catchall" rule Gelb's statements as to the threats must be, among other things, evidence of "a material fact," a term not defined in the Federal Rules of Evidence. If a "material" fact is simply a "relevant" fact, the qualification adds nothing to the sentence in Rule 402 excluding irrelevant evidence. Rule 401 of the Federal Rules of Evidence recites that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The notes of the Advisory Committee on the proposed Rules show that it used this language because "it has the advantage of avoiding the loosely used and ambiguous word 'material.' "

▪ But Congress and not the Advisory Committee drafted Rule 804(b)(5) [and Rule 803(24), which has identical pertinent wording], and nothing in the legislative history throws light on the question of whether the drafters sought to make a distinction between "material" and "relevant." Chief Judge Weinstein has suggested that use of the word "material" probably requires that the evidence concern a matter that is not "trivial or collateral." *United States v. Iaconetti*, 406 F.Supp. 554, 559 (E.D.N.Y.), aff'd, 540 F.2d 574 (2d Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). At least the evidence must be relevant.

▪ The government urges that Charles' threats are relevant to his motive to cause his brother John to commit the murder. The threats are certainly evidence that Charles knew that Gelb was the cause of the arrest and realized that Gelb would probably testify against him. To that extent the threats are relevant to show that Charles had an incentive, shared, the government claims, with John, to cause Gelb's disappearance.

▪ But to admit the evidence on this basis would be inconsistent with the second qualification of Rule 804(b)(5). For the threats are not "more probative" than other evidence the government has to show Charles' appreciation that Gelb's testimony would be damaging to him. The government proposes to offer the testimony of Gelb at a hearing in which he recounted the events leading up to the arrest and during which Charles' counsel thoroughly cross-examined Gelb. Gelb's accusations under oath that Charles possessed a weapon and resisted arrest are as directly probative of Charles' motive to arrange the murder as are his threats.

The government also contends that the threats to Gelb are relevant to show the murder was committed as a part of the conduct of the affairs of the "enterprise." The argument is that warnings not to testify against someone in fact a member of the Gambino Family tend to prove that the killing was not a random homicide unrelated to the protection of the enterprise.

A threat by Charles himself would not itself justify an inference that it was made in furtherance of the aims of the enterprise or of the Gambino Family. It is just as likely he made the threat on his own behalf. The government does not suggest that he announced his threats as part of the activities or policy of the enterprise or of the Gambino Family.

▪ Moreover, John allegedly committed the murder. Indeed, the government says there will be testimony that John said he had committed the murder to prevent his brother from going to jail. Perhaps the government has other evidence to warrant a jury in finding that John killed not solely out of a fraternal feeling but to serve the purposes of the enterprise. But evidence

of Charles' threats is not proof that such was John's motive.

The government points out that Gelb stated that some of the threats were made by Charles' friends or associates. Evidence that an "associate" of the "enterprise" made a threat would tend to show that members of the enterprise believed that its interests were threatened by Gelb's prospective testimony and therefore that the murder was committed on behalf of the enterprise.

However, the government does not claim that Gelb's statements identified any one of the alleged "associates" of Charles as being associated with the enterprise or with the Gambino Crime Family. If Gelb had specified the identity of any such "associate" of Charles, and the government could show that that person was associated with the enterprise, the court would have to face another question.

It would hardly be warranted to conclude from the fact that someone said he was a "friend" or "associate" of Charles that he was therefore associated with the enterprise. But even if that implication could be made, the testimony would be of hearsay within hearsay and would be inadmissible unless both Gelb's statement and that made to him conformed to an exception to the hearsay rule. Fed.R.Evid. 805. The government suggests that both parts of the combined double hearsay qualify for admission under Rule 804(b)(5). *Cf. Zenith Radio Corp. v. Matsushita Elec. Ind. Co.,* 505 F.Supp. 1190, 1266 (E.D.Pa.1980), *rev'd in part,* 723 F.2d 238 (3d Cir.1983), *rev'd in part,* — U.S. ——, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The theory on which some hearsay statements are accepted in evidence is that they have been made under circumstances supposed to furnish appropriate guarantees of trustworthiness, guarantees sufficient to dispense with cross-examination of the declarant. When the court admits hearsay within hearsay a defendant cannot test by cross-examination the statements of either declarant, the possibility of mistake or misunderstanding or even falsehood increases, and the probative value of the evidence declines. This is particularly so where the hearsay within hearsay concerns not an isolated and concrete fact but requires a further inference as to a relationship.

■ There are instances where both declarations meet the guarantees of trustworthiness required under Rule 804(b)(5). *See United States v. Medico,* 557 F.2d 309, 314–16 (2d Cir.), *cert. denied,* 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977). But here the inference that because someone is a "friend" or "associate" of Charles he is probably a part of the "enterprise" is sufficiently weak so that this court would exclude the evidence under Rule 403. Its probative value is substantially outweighed by the danger of unfair prejudice.

■ 2. The hearing testimony of Gelb dated February 10, 1975, and referred to above, will be admitted not as proof of his assertions but to show that he made them. For reasons already stated Gelb's testimony is relevant to the issue of motive to kill him and is not hearsay as to that issue.

■ Similarly the government may offer the indictment of Charles not to prove the facts it states but to show he was under indictment as part of the proof of the motive for the murder.

■ 3. Under Rule 803(22), a judgment of a felony conviction of a defendant is admissible against that defendant, but not against others, "to prove any fact essential to sustain the judgment." A felony conviction is thus admissible against a defendant even though it is for a crime not constituting a predicate act alleged in the indictment, provided that a fact essential to sustain the judgment of conviction is relevant to prove the predicate act or some other act relevant to the guilt of that defendant.

■ 4. To the extent that the indictment or other record of a prior case that culminated in a judgment of conviction is required to show what facts were "essential to sustain" that judgment, the court, in exercising its responsibility under Rule 104(a), may consider preliminarily such in-

dictments or other records and admit the essential facts in evidence before the jury.

5. Rule 803(22), while it makes a judgment adjudging a person guilty of a felony an exception to the hearsay rule, contains no similar exception for a conviction of a misdemeanor. The government seeks to introduce under the "catch-all" provisions of Rule 803(24) or Rule 804(b)(5) misdemeanor convictions of defendants to prove some of the elements of predicate acts (which under 18 U.S.C. § 1961(1) must be felonies), with other facts required to establish the predicate acts supplied by other proof.

■ The court sees no reason in principle why such misdemeanor convictions should not be admitted provided they meet the conditions of Rules 803(24) and 804(b)(5). The omission from Rule 803(22) of a hearsay exception for a misdemeanor conviction does not imply a prohibition against admission of such a conviction under some other exception to the hearsay rule. In fact Rules 803(24) and 804(b)(5) apply by their terms only to statements "not specifically covered" by other exceptions.

■ The Advisory Committee explained in its notes that Rule 803(22) made only convictions of a felony an exception to the hearsay rule "because motivation to defend at this [misdemeanor] level is often minimal or nonexistent." Where the motivation to defend against a misdemeanor charge is comparable to the motivation to defend against a felony charge, the misdemeanor conviction has "equivalent circumstantial guarantees of trustworthiness." If the government can so satisfy the court, the misdemeanor convictions of defendants will be admitted.

6. The government proposes to offer guilty pleas and allocutions by defendants as admissions under Rule 801(d)(2)(A) and to offer the pleas and allocutions of both defendants and third parties as statements against interest under Rule 804(b)(3).

Rule 801(d)(2)(A) includes among the statements defined as "not hearsay," a statement "offered against a party" which is "his own statement." Rule 804(b)(3) includes among the statements "not excluded by the hearsay rule if the declarant is unavailable as a witness," a statement which "so far tended to subject him to civil or criminal liability" that "a reasonable man in his position would not have made the statement unless he believed it to be true."

■ When offered against a defendant a plea by him to a felony and his allocution on that plea are admissions under Rule 801(d)(2)(A). If a defendant or third party is "unavailable" within the meaning of Rule 804, such pleas and allocutions, so far as they make statements against the declarant's penal interest, are admissible under Rule 804(b)(3), if they meet the further qualification of the Rule. *See United States v. Winley*, 638 F.2d 560, 561–62 (2d Cir.1981), *cert. denied*, 455 U.S. 959, 102 S.Ct. 1472, 71 L.Ed.2d 678 (1982); *United States v. Persico*, 621 F.Supp. 842, 871 (S.D.N.Y.1985). A "reasonable man" would not generally make an admission that he was guilty of a felony "unless he believed" the admission to be true. Therefore, unless it appears that a reasonable man would have pleaded to a felony though he did not believe himself guilty, the court will accept the evidence under Rule 804(b)(3).

A more difficult question is whether an allocution and plea by a defendant or a third party to a misdemeanor is admissible under these Rules. *Weinstein's Evidence*, ¶ 803(22)[01], at 803–354–803–355 (1985), suggests that in order "to effectuate the policy of Rule 803(22) barring evidence of convictions" of offenses less than felonies, evidence of guilty pleas in non-felony cases should not be admitted under either Rule 801(d)(2) or Rule 804(b)(3).

It may well be that accused persons at times enter pleas to minor offenses because they have little motivation to defend. There are no doubt instances in which the pleader has a stake in pleading falsely to facts establishing such an offense in order to avoid prosecution on an unrelated felo-

ny. In short, an accused may make admissions of fact that are of dubious trustworthiness.

■ But in this court's opinion that possibility does not justify a blanket exclusion of pleas and allocutions to misdemeanors. As already noted, Rule 803(22) does not "bar" evidence of a misdemeanor conviction but merely makes conviction of a felony an exception to the hearsay rule. Rule 803(22) is silent as to whether a misdemeanor should be admissible under some other rule. As discussed above, misdemeanor convictions may have guarantees of trustworthiness comparable to those of felony convictions.

■ By the same token, pleas and allocutions to misdemeanors by defendants may be made under circumstances indicating that they are quite as reliable as many admissions routinely admitted under Rule 801(d)(2)(A). In fact that subsection of the Rule does not even require that the declarant manifest his belief in the truth of the admission. Under Rule 403 the court can exclude a plea to a misdemeanor made under conditions that suggest its untrustworthiness. But unless those conditions appear, the court will admit such a plea and the accompanying allocution as an admission of a party.

■ Similarly, this court concludes that there should be no wholesale exclusion of defendants' or third parties' misdemeanor pleas and allocutions when offered as statements against interest. Before the adoption of the Federal Rules of Evidence two courts went so far as to admit pleas of guilty to traffic violations as statements against interest. *Rain v. Pavkov*, 357 F.2d 506, 509 (3d Cir.1966); *M.F.A. Mut. Ins. Co. v. Dixon*, 243 F.Supp. 806, 812 (W.D. Ark.1965).

Rule 804(b)(3) does not restrict the exception to the hearsay rule for statements against penal interest to those statements admitting felonies. The Rule provides an exception for any statement admitting criminal liability provided it meets the Rule's qualification that the statement was made under such circumstances that a "reasonable man" in the declarant's position would not have admitted his guilt unless "he believed" he was guilty.

■ The court will therefore admit under Rule 804(b)(3) relevant misdemeanor pleas and allocutions of "unavailable" defendants and third parties to the extent they state matters against the declarants' penal interest, provided the circumstances show that reasonable men in the position of the declarants would not have admitted the crimes unless they believed they had committed them.

7. The government has been unable to obtain the minutes of a 1969 statement against interest by a third person in the form of a plea of guilty in this court to a felony. The government thus seeks to offer the judgment of conviction signed by the judge reciting the fact that the third party pleaded guilty as evidence of the fact of the plea.

■ Rule 803(8) provides an exception to the hearsay rule for records of "public offices" setting forth, among other things, "matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel." This court is a "public office." In accordance with the duty imposed on him by law, the judge who took the plea observed the person plead guilty. The judge, who is not a "law enforcement" officer, had a duty to report the fact of the plea when he signed the judgment. Therefore the fact of the plea of guilty to the charges is admissible under Rule 803(8). The statement of facts made in the plea that the declarant committed the acts charged is admissible under Rule 804(b)(3) as a statement against penal interest. Presumably the fact of the plea of guilty may also be confirmed by the docket sheet, another public record.

■ The hearsay within hearsay is admissible under Rule 805 since each part of the combined statements conforms to an

exception to the hearsay rule, and the trustworthiness of both is assured.

■ Nothing in Rule 803(22) by its terms prohibits the use of the judgment to prove the fact of the plea where other hearsay exceptions apply. That Rule provides an exception to the hearsay rule for a felony conviction entered "after a trial or upon a plea of guilty" but does "not includ[e]" judgments of conviction against persons other than the accused "when offered by the Government in a criminal prosecution." The fact that Rule 803(22) does not include within the hearsay exception such a judgment against a third person should not give rise to an implication that the drafters of the Rule intended to exclude from evidence statements in judgments admissible under other exceptions.

It is true that the Court of Appeals for the Second Circuit in interpreting Rule 803(8) gave a prohibitory effect to language "excluding" matters from the public records hearsay exception. *United States v. Oates*, 560 F.2d 45 (2d Cir.1977). There the Court of Appeals for the Second Circuit read the language of Rule 803(8), "excluding" from the Rule's hearsay exception matters observed by "law enforcement personnel" to make "law enforcement reports absolutely inadmissible against defendants in criminal cases." *Id.* at 72. The court said that such reports "cannot satisfy the standards of any hearsay exception" if offered against an accused. *Id.* at 84.

No doubt there are serious questions as to the propriety of admitting evaluative reports of police officers of their alleged observation of the commission of crimes. But the decision in *Oates* to draw implications from Rule 803(8) is hardly persuasive that the court should give an analogous interpretation to the language in Rule 803(22) carving out an exception to the hearsay rule for judgments against third parties. Moreover, the Court of Appeals for the Second Circuit has substantially restricted the *Oates* case, describing as "obiter" its language saying that law enforcement reports "cannot satisfy the standards of any hearsay exception" if they are offered against the accused. *United States v. Yakobov*, 712 F.2d 20, 25 (2d Cir.1983).

Here there is nothing "evaluative" about the judge's recording of a plea of guilty. *Cf. United States v. Yakobov, supra,* 712 F.2d at 26. That recording was a routine, nonadversarial matter, as to which there are no circumstances to suggest lack of trustworthiness. *See, e.g., United States v. Orozco,* 590 F.2d 789, 793–94 (9th Cir.), *cert. denied,* 442 U.S. 920, 99 S.Ct. 2845, 61 L.Ed.2d 288 (1979) (admitting computer data as to license plate information furnished by customs inspectors); *Weinstein's Evidence, supra,* at 803–258–803–266, and cases cited.

■ In the light of the trustworthiness of the judgment showing the plea of guilty, admission of the record does not violate the confrontation clause of the Sixth Amendment to the Constitution. *See United States v. Inadi,* —— U.S. ——, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986). The court will therefore admit the 1969 judgment to show that the third person entered a plea of guilty.

8. The government seeks to offer a number of convictions of third parties not as proof of the commission of the acts charged but for a "nonhearsay" purpose, namely, to show those persons' association with defendants and thereby to prove the "enterprise." The argument is that "the fact that the defendants and certain third parties have been arrested and prosecuted together during the period covered by the indictment plainly tends to prove their association with one another." The government claims that the jury, without considering the convictions as evidence of commission of the underlying offenses, could infer from the fact of joint prosecution of third parties with defendants that all were associated together.

■ If the joint convictions of defendants and third persons be not proper proof of the commission of joint criminal acts, the only basis for concluding that those persons were associated with the defendants is

that the prosecutor so decided. A prosecutor's view of a relationship is hardly proof that it exists. *Cf. United States v. Vandetti*, 623 F.2d 1144, 1147 (6th Cir.1980). The convictions of third parties are not admissible as "nonhearsay" to prove an association with defendants.

9. The government wishes to offer the 1970 convictions for misdemeanor criminal contempt of Aniello Dellacroce, now deceased but indicted as "underboss" of the Gambino Crime Family and supervisor of the "enterprise." The offer is said to be not of hearsay but of proof of "the lengths to which Dellacroce would go to conceal the existence of the enterprise." The government will offer the convictions not to show the contemptuous underlying conduct, which it will prove through other evidence. Rather the government's purpose, it says, is to show that Dellacroce "was willing to suffer indictment, conviction and a prison term rather than divulge information about the enterprise."

 The government may present evidence that members of the enterprise took steps to conceal its existence. One of Dellacroce's two contempt convictions was on a plea of guilty, and the minutes of Dellacroce's plea may be admissible as statements against interest. Fed.R.Evid. 804(b)(3).

 The government may offer relevant evidence to show that Dellacroce anticipated that his contempt would lead to indictment, conviction, and punishment. But the judgment itself, coming after the refusal to divulge facts, is not relevant to show what Dellacroce foresaw when he committed the contempt and is not admissible for that purpose.

10. Much the same may be said of the felony convictions of associates of defendants for criminal contempt. The government seeks to offer these under Rule 803(24), claiming they are evidence of the "organized stonewalling" of a grand jury investigation concerning the activities of the Ravenite Social Club, which defendants and other members of the Gambino Crime Family allegedly frequented.

 Proof of the acts of contempt by these associates may be relevant to the government's proof that defendants organized the refusal to give information, as may proof of what the defendants and the third persons anticipated by way of prosecution and punishment. But a subsequent conviction and penalty imposed on a person is not proof of what was to be anticipated. Of course, the conviction and sentence of one of the associates might be proof of what a defendant or another associate later expected, provided that there is proof of their knowledge of the earlier conviction.

11. The government proposes to offer a series of misdemeanor gambling convictions between April 1981 and February 1982 of third parties employed by the enterprise and of defendant Anthony Rampino. The government asserts that other evidence will show that defendants responded immediately to the arrest of these individuals and arranged for lawyers, bail money, and payment of the fines imposed. According to the government, the convictions will show, with other evidence, how defendants reacted to the arrests of their associates so as to minimize the risk of an associate's cooperation with law enforcement and to facilitate the resumption of the enterprise's gambling activities.

 Evidence of the response of the defendants to arrests of specific associates is relevant to prove the enterprise and its operation and is admissible. It follows that the government may offer proof of the arrests of the specific persons for whom defendants made a response. By the same token, proof of payment by defendants of specific amounts of the fines imposed on specific associates is admissible.

 However, the misdemeanor convictions of third parties are not admissible under Rule 803(24) to prove that they were guilty of the gambling offenses with which they were charged. Proof of an element of a crime by evidence of a judgment of conviction after trial of a third person appar-

ently still would be considered by the Supreme Court a violation of the Confrontation Clause. *See Pointer v. State of Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *cf. Lee v. Illinois,* —— U.S. ——, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986).

12. The indictment in Florida of Aniello Dellacroce with Anthony Plate as co-defendant is admissible as corroboration of other evidence that defendant Johnson's motive to kill Plate was to give Dellacroce a better chance for acquittal.

The government wishes to offer the acquittal of Dellacroce to show that Johnson by committing the murder successfully prevented Dellacroce's conviction. But no one can now divine the true reason why the jury acquitted Dellacroce. The acquittal will be excluded.

13. As the case unfolds at trial the court will, of course, rule on any defense applications to exclude under Rule 403 evidence otherwise admissible. The court directs the government to make its offers under Rules 803(24) and 804(b)(5) after the other evidence has been introduced.

So ordered.