Delores D. GOLDSBERRY, Appellant,

v.

UNITED STATES, Appellee.

No. 90–668.

District of Columbia Court of Appeals.

Argued March 20, 1991.
Decided Oct. 8, 1991.

Peter Mann, appointed by the court, for appellant.

David H. Baum, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese, III, and Andrew D. Klingenstein, Asst. U.S. Attys., were on the brief, for appellee.

Before ROGERS, Chief Judge, FERREN, Associate Judge, and BELSON, Senior Judge.*

---

\* Judge Belson was an Associate Judge of the court at the time of argument. His Status changed to Senior Judge on July 24, 1991.

1. The trial court sentenced appellant to a prison term of twenty months to five years on the

FERREN, Associate Judge:

A jury convicted appellant of distribution of cocaine, D.C.Code § 33–541(a)(1) (1988), possession of drug paraphernalia with intent to use, *id.* § 33–603(a), and willfully failing to appear, *id.* § 23–1327(a) (1989).[1] Appellant challenges only her conviction for willfully failing to appear. She contends the trial court erred: (1) in admitting hearsay evidence comprised of docket entries and a notice to return to court; (2) in permitting this same hearsay evidence to violate her rights under the Confrontation Clause of the Sixth Amendment; and (3) in refusing to grant her motion for judgment of acquittal for insufficient evidence. We affirm.

### I.

### A.

The trial court permitted the government to introduce Superior Court docket entries for March 3, 1989, and May 15, 1989, to prove that appellant was in court on March 3 and absent on May 15. Arlington G. Sellers, a calendar coordinator and twenty-year Superior Court employee who had served eight years as a courtroom clerk, was qualified as an expert in courtroom procedures. *Cf. Smith v. United States,* 583 A.2d 975, 984–85 (D.C.1990) (although courtroom clerk may be qualified as expert to testify on general practice of courtroom clerks, witness had insufficient personal knowledge to provide evidence of non-routine practices). Sellers testified that the case file that contained the challenged docket entries and Notice to Return had been "sealed," and that the seal indicated that it was "a true copy of the court proceedings, Xerox copy of the jacket certified by a Courtroom Clerk as being a true copy of the file." Sellers identified the initials "D.B." on the docket entries as those of Donald Baumgartner, a courtroom clerk whom Sellers had trained, who worked un-

distribution charge, to a concurrent prison term of thirty days on the drug paraphernalia charge, and to a consecutive prison term of one to three years for failure to appear.

der Sellers, and who was on leave the day of trial. Sellers testified that normal procedures require all parties to identify themselves at a hearing. He then testified that either the courtroom clerk or the judge informs the defendant, at the conclusion of the hearing, of the defendant's next scheduled appearance date and of the penalties for failing to appear. Sellers further testified that the defendant is required to sign a written notice reflecting that the defendant has received notice of the next appearance date. Sellers added that normally the defendant signs the notice in the presence of the courtroom clerk. Sellers also testified that if a defendant does not appear at a scheduled hearing, the court will issue a bench warrant for the defendant's arrest and a record entry will reflect that fact. Sellers then testified that, to the best of his knowledge, the March 3 and May 15 docket entries had been made in accordance with established courtroom procedures.

The government concedes the docket entries are hearsay. The critical question is whether these entries were admissible in evidence under a recognized exception to the hearsay rule. The government cites the public records exception:

All documents prepared by public officials pursuant to a duty imposed by law or required by the nature of their offices are admissible as proof of the facts stated therein. * * * The reason [for] the rule is that it would be burdensome and inconvenient to call public officials to appear in the myriad cases in which their testimony might be required in a court of law, and that records and reports prepared by such officials in the course of their duties are generally trustworthy. *Howard v. United States,* 108 U.S.App. D.C. 38, 39–40, 278 F.2d 872, 873–74 (1960) (quoting *Olender v. United States,* 210 F.2d 795, 801 (9th Cir.1954)); *see* E. CLEARY, MCCORMICK ON EVIDENCE § 315 (3d ed. 1984).

■ To come within this exception, the record first must be authenticated as an official record of the governmental body in question. *See* Super.Ct.Crim.R. 27(a)(1);[2] *Willingham v. United States,* 467 A.2d 742, 744 (D.C.1983); *see also In re D.M.C.,* 503 A.2d 1280, 1284 n. 6 (D.C.1986) (civil rules). Next, the party proffering the record must prove that " 'the facts stated in the document are within the personal knowledge and observation of the recording official' " and that " 'the document is prepared pursuant to a duty imposed by law or implied by the nature of the office.' " *In re D.M.C.,* 503 A.2d at 1283–84 (quoting *Howard,* 108 U.S.App.D.C. at 40, 278 F.2d at 874).

Appellant does not question that the certified copy of the case file identified by Sellers met the authentication requirement of Super.Ct.Crim.R. 27(a)(1), *supra* note 2. Appellant acknowledges, moreover, that the docket entries were made in the course of official duty.[3] She argues, however, that the government presented insufficient evidence to satisfy the remaining criterion: that the entries were based on the recording official's personal knowledge. More specifically, she contends that Sellers' testimony was insufficient for this purpose because he did not have personal knowledge of the docket entries and could not state

---

**2.** Super.Ct.Crim.R. 27(a)(1) on authenticating official domestic records provides:

An official record kept within the United States, or any state, district, commonwealth, territory, or insular possession thereof, or within the Panama Canal Zone, the Trust Territory of the Pacific Islands, or the Ryukyu Islands, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by the officer's deputy, and accompanied by a certificate that such officer has the custody. The certificate may be made by a judge of a court of record of the district

or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of the officer's office.

**3.** Courtroom clerks are guided by Super.Ct.Crim.R. 55 ("Records of the Clerk"):

The clerk shall make entries in appropriate dockets and records of all papers and documents filed in the clerk's office and of all proceedings of the Court.

that "D.B." relied on personal knowledge to fill out the form. According to appellant, Sellers could testify only that, pursuant to general courtroom procedure, "D.B." should, and normally would, have signed the entries based on first-hand knowledge and observation. Appellant argues that such testimony is insufficient as a matter of law to admit the docket entries as a public record.

■ Appellant's argument is unconvincing. The official who prepares a document need not testify to satisfy the personal knowledge requirement of the public record exception. *See Howard*, 108 U.S.App.D.C. at 39–40, 278 F.2d at 873–74 (United States Commissioner's report disclosing details of narcotics transaction admissible upon defense request under public record exception without opportunity for government to cross-examine Commissioner or whoever prepared report for him). Such testimony is unnecessary because the recorder's official duty to make an accurate statement in itself supplies a sufficient indication of trustworthiness. *See also Hara v. United States*, 505 F.2d 495, 497 (9th

Cir.1974) (quoting 5 WIGMORE ON EVIDENCE § 1635 (3d ed. 1940)), *cert. denied*, 420 U.S. 933, 95 S.Ct. 1138, 43 L.Ed.2d 407 (1975). In short, it "is sufficient that the offering witness be able to identify the record as authentic and as made in the ordinary course of business." *United States v. Newman*, 468 F.2d 791, 795–96 (5th Cir. 1972), *cert. denied*, 411 U.S. 905, 93 S.Ct. 1527, 36 L.Ed.2d 194 (1973).[4]

■ The record before us is sufficient to sustain a finding that the docket entries were made with the required personal knowledge. Sellers identified the docket entries as official court records and testified that they appeared to have been made in conformity with normal courtroom procedures, *i.e.*, under personal observation of the courtroom clerk. Moreover, the entries were initialled "D.B.," whom Sellers identified as Donald Baumgartner, a courtroom clerk under his supervision.[5] Accordingly, the evidence was sufficient to sustain the court's ruling that the docket entries were admissible under the public record exception.[6]

4. Because Sellers was able to identify the official who made the docket entries, we need not reach the question whether it is necessary, for admissibility, to identify the person who recorded an item in the public record. The caselaw suggests, however, that admissibility does not depend on such identification. A document will be admissible merely if competent evidence shows it was made pursuant to official duty. *See, e.g., Hara*, 505 F.2d at 497–98 (Selective Service document showing defendant's failure to appear for draft properly admitted in evidence where document's author unidentified); *United States v. Hudson*, 479 F.2d 251, 253–54 (9th Cir.1972) (same), *cert. denied*, 414 U.S. 1012, 94 S.Ct. 377, 38 L.Ed.2d 250 (1973); *Newman*, 468 F.2d at 795–96 (prison admission summary admissible in evidence although offering witness himself did not record information or even know who did). Of course, the fact that the offering witness does not know who made the record may be used to challenge the weight the jury should give the document, but it does not affect admissibility. *See id.*

5. As indicated in Part I.B. *infra*, the Notice to Return to Court was signed by "D. Baumgartner." This further corroborates Sellers' testimony that the "D.B." who signed the docket entries was Donald Baumgartner.

6. Appellant relies on *United States v. Oates*, 560 F.2d 45 (2nd Cir.1977), in which the court con-

sidered admissibility of an official report and accompanying worksheet of a U.S. Customs Service chemist who analyzed the white powdery substance seized from a defendant in a prosecution for possession with intent to distribute heroin. The chemist was unavailable to testify, so the government elicited testimony from another Customs Service chemist who, although she did not know the chemist who prepared the report, "was able to testify concerning the regular practices and procedures used by Customs Service chemists in analyzing unknown substances." *Id.* at 64. The court of appeals, in reversing, ruled that the report did not fall within the public records exception of Federal Rules of Evidence 803(8). The court said the report was excluded by the language of the exception that precludes admissibility in criminal cases of "factual findings resulting from an investigation made pursuant to authority granted by law," FRE 803(8)(C), or of "matters observed by police officers and other law enforcement personnel," FRE 803(8)(B), *Oates*, 560 F.2d at 66–67. The *Oates* decision, which has been narrowly construed subsequently by the Second Circuit itself, *see United States v. Yakobov*, 712 F.2d 20, 25 (2d Cir.1983); *United States v. Gotti*, 641 F.Supp. 283, 291 (E.D.N.Y.1986), is inapposite here.

Chemist reports are admissible under a special statute in the District of Columbia. *See*

### B.

■ Appellant also challenges the admissibility of the Notice to Return to Court dated March 3, 1989 purportedly signed by appellant. This notice advised appellant of the time and place of trial, bore the signature of "Delores Goldsberry," and was witnessed by Deputy Clerk "D. Baumgartner." Appellant argues that the notice was inadmissible hearsay introduced for the truth of the matter asserted, *i.e.*, that appellant had signed the document. Appellant is mistaken. The notice was not hearsay; rather, it was offered merely "to show that certain words had been said to appellant" which, as a result, showed that she had notice of her next appearance date. *Jenkins v. United States,* 415 A.2d 545, 547 (D.C.1980); *see* E. CLEARY, McCORMICK ON EVIDENCE § 249 at 733–34 (3d ed. 1984) ("When it is proved that D made a statement to X, with the purpose of showing the probable state of mind thereby induced in X, such as being put on notice ... the evidence is not subject to attack as hearsay."). The Notice to Return to Court, therefore, was properly admitted in evidence. Moreover, even if the Notice were hearsay, it would have been properly admitted for the same reasons that justified admission of the docket entries as public records.

### II.

### A.

Appellant argues that even if the docket entries were admissible in evidence under the public record exception to the hearsay rule, their admission violated her Sixth Amendment right to confront witnesses against her. *See Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980); *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965).

■ The Supreme Court has held that, in general, statements admissible under an exception to the hearsay rule will satisfy the requirements of the Sixth Amendment Confrontation Clause if two conditions are met: (1) the prosecution must demonstrate that the declarant is unavailable to testify, and (2) the statement must have adequate indicia of reliability, which may be inferred either from its falling "within a firmly rooted hearsay exception" or from some other "showing of particularized guarantees of trustworthiness." *Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539; *see Idaho v. Wright,* —— U.S. ——, 110 S.Ct. 3139, 3146–47, 111 L.Ed.2d 638 (1990).

■ The fact that the courtroom clerk, Mr. Baumgartner, was on leave does not necessarily mean he was "unavailable" within the meaning of *Roberts* and subsequent Supreme Court cases. On the other hand, in *United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), the Court stressed that " 'demonstration of unavailability is not always required' " for admissible hearsay to satisfy the Confrontation Clause. *Id.* at 392, 106 S.Ct. at 1124 (quoting *Roberts,* 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7). The court has recently emphasized, moreover, that *Roberts* merely set forth "a general approach," *Wright,* 110 S.Ct. at 3146 which is not necessarily applicable in all cases.

In *Inadi,* for example, the Court held that the Confrontation Clause does not require a showing of unavailability as a condition for admission of the out-of-court statements of a non-testifying co-conspirator. *See Inadi,* 475 U.S. at 396, 106 S.Ct. at 1126. In so ruling, the Court noted that *Roberts* concerned the admission of testimony from a prior judicial proceeding in place of live testimony at trial. The Court then recognized that the "unavailability rule" had been fashioned for cases concerning admission of prior testimony:

*Giles v. District of Columbia,* 548 A.2d 48, 57 (D.C.1988). More to the point, the Federal Rules of Evidence are generally inapplicable in Superior Court. *See In re D.M.C.,* 503 A.2d at 1283. But even if *Oates* were applicable, the specified exceptions under FRE 803 would not preclude admission of the docket entries in this

case. These entries did not result from an investigation, and courtroom clerks are not "law enforcement personnel." *Cf. Gotti,* 641 F.Supp. at 290 (record of conviction admitted under public record exception because judge who recorded same was not "law enforcement personnel").

*Roberts* simply reaffirmed a longstanding rule, foreshadowed in *Pointer v. Texas*, 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923] (1965), established in *Barber [v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)], and refined in a line of cases up through *Roberts*, that applies unavailability analysis to prior testimony. *Roberts* cannot fairly be read to stand for the radical proposition that no out-of-court statement can be introduced by the government without a showing that the declarant is unavailable.

*Id.* at 394, 106 S.Ct. at 1125 (footnote omitted).

Having noted that the unavailability rule had been established in cases concerning admission of "prior testimony," the *Inadi* Court found it easy to distinguish the case before it from *Roberts* and its predecessors. The Court noted that statements by co-conspirators at the time they were made have evidentiary significance that could not be recaptured through live testimony at trial. According to the Court, such statements "are usually irreplaceable as substantive evidence," and thus their admission "actually furthers the 'Confrontation Clause's very mission' which is to 'advance the "accuracy of the truth-determining process in criminal trials." ' " *Id.* at 396, 106 S.Ct. at 1126 (citations omitted).[7]

This rationale was sufficiently distinct that the Court was not forced to limit the unavailability rule to prior testimony situations; perhaps another situation falling somewhere between the *Roberts* line of cases and the *Inadi* co-conspirator ruling would provide good reason to reinvigorate the unavailability rule. Accordingly, if we are to say witness availability is not required in a situation—such as the instant case—that does not call for admission of prior testimony, we believe we must provide a reason beyond mere citation of *Inadi* showing why constitutional admissibility does not require live testimony.

We begin by noting that the docket entries, as such, are not prior testimony. Furthermore, unlike such testimony, their admissibility under an exception to the hearsay rule "is not premised on the [declarant's] unavailability." *Harrison v. United States*, 435 A.2d 734, 738 (D.C.1981) (en banc) (FERREN, J., concurring in the result) (sustaining, as consistent with Confrontation Clause, admission in evidence of spontaneous utterance at scene of crime by complainant absent from trial). Finally, appellant's interest in confronting the clerk who made the docket entries would appear to be remote. Given the nature of those entries in a high-volume court, it is difficult to imagine—and appellant has made no proffer—how the clerk's testimony could heighten understanding of the entries. *See United States v. Hing Shair Chan*, 680 F.Supp. 521, 522 (E.D.N.Y.1988) (unavailability of custodian of hotel records no Sixth Amendment bar to admission of foreign business records in evidence). We have already explained that the official duty to make an accurate statement in the public record is considered the guarantee of trustworthiness that permits admission of a public record in the absence of the recorder. Implicit in this rationale is the belief that the contemporaneous record itself is likely to reflect the situation more accurately than the recorder's memory as reported days, months, or years later—especially in a high-volume docket situation such as the one we deal with here. In this sense, absent evidence to support a contrary inference, the contemporary evidence of a docket entry—like a co-conspirator's statement—is the best evidence of what happened at the crucial time.

As we have said in another context: "[i]n limited situations, production of an available witness may be excused where the utility of trial confrontation is remote. This is such a situation." *Howard v. United States*, 473 A.2d 835, 839 (D.C.1984) (citing *Roberts*, 448 U.S. at 65 n. 7, 100 S.Ct. at 2538 n. 7). For all these reasons,

---

**7.** The significance of such statements as substantive evidence is also reflected in the Federal Rules of Evidence, which provide that a statement is not hearsay if it "is offered against a party and is ... a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." FRE § 801(d)(2)(E).

therefore, the clerk's unavailability does not run afoul of the Confrontation Clause.

We turn to the reliability criterion. That criterion is easily met here because the public record exception is "firmly rooted," *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539, it is among the hearsay "exceptions that 'rest upon such solid foundations that admission of virtually any evidence within them comports with the substance of the constitutional protections.'" *Howard*, 473 A.2d at 838 (quoting *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539) (other citation omitted).

In sum, admissibility of the docket entries under the public record exception meets Confrontation Clause requirements—as courts in other jurisdictions have held. *See, e.g., Hing Shair Chan*, 680 F.Supp. at 522 (sustaining admissibility of hotel records without testimony by custodian); *Gotti*, 641 F.Supp. at 291 (sustaining admissibility of judgment of conviction signed by judge to prove guilty plea).

### B.

Appellant also contends that admission of the Notice to Return to Court violated her rights under the Confrontation Clause. She is wrong because evidence that is not hearsay does not implicate the Confrontation Clause. *See United States v. Wright*, 251 U.S.App.D.C. 276, 286, 783 F.2d 1091, 1101 (1986). But even if the notice were hearsay, it would not violate appellant's Sixth Amendment rights for the same reasons that the docket entries satisfied constitutional requirements.

### III.

■ Appellant also challenges the trial court's denial of her motion for judgment of acquittal based on insufficient evidence. We may reverse only if, viewing the evidence in the light most favorable to the government, the trial court decision is clearly erroneous. *See Raymond v. United States*, 396 A.2d 975, 978 (D.C.1979). To show that appellant willfully failed to appear, the government had to prove that she: "(1) was released pending trial or sentencing, (2) was required to appear in court on a specified date or at a specified time, and (3) failed to appear, and (4) that [her] failure to appear was willful." *Smith*, 583 A.2d at 978 (citations omitted); *see Bolan v. United States*, 587 A.2d 458, 460 (D.C.1991). Appellant concedes the first three elements were satisfied; she challenges only the government's failure to prove the fourth—her willfulness in failing to appear.

■ There was sufficient evidence, viewed in the light most favorable to the government, from which a jury could find willfulness. Sellers testified that a status hearing is typically held with all parties present, and the March 3, 1989 docket entry indicates that appellant was present at that hearing. Moreover, the signature, "Delores Goldsberry," appeared on the notice to return May 15, 1989. These facts were sufficient to establish a prima facie case that appellant willfully failed to appear. *See Trice v. United States*, 525 A.2d 176, 179–80 (D.C.1987). Because this evidence was unrebutted, the jury was justified in returning a guilty verdict.

*Affirmed.*

ROGERS, Chief Judge, concurring:

Despite some tempering language in the majority opinion, referring to reinvigoration of the unavailability rule, *see* majority opinion at 381, I respectfully suggest that the majority has misconstrued *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), as confining *Ohio v. Roberts* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), to instances involving prior testimony, or at the least to situations so closely analogous as to be virtually indistinguishable. Subsequent decisions of the Supreme Court indicate that *Ohio v. Roberts* continues to set forth the "general approach" which must be employed to determine whether the admission of evidence under an exception to the hearsay rule violates a defendant's Sixth Amendment right to confront witnesses against her. *See Idaho v. Wright*, —— U.S. ——, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990)

(quoting *Ohio v. Roberts, supra,* 448 U.S. at 65, 100 S.Ct. at 2538).[8]

Although the Court in *Ohio v. Roberts* disclaimed any intention to state a rule which would be uniformly applicable to all hearsay exceptions, it stated that "a general approach to the problem is discernible." *Ohio v. Roberts, supra,* 448 U.S. at 65, 100 S.Ct. at 2538.[9] The Court explained that the Confrontation Clause restricts the admissibility of hearsay evidence against an accused in two ways. The first, representing a "rule of necessity," involves the general requirement that the prosecutor either produce the witness or demonstrate the witness' unavailability before introducing the witness' out-of-court statement. *Id.* The second restriction is triggered once unavailability has been shown, and requires that there be adequate proof of the trustworthiness of the challenged statement to fulfill the purpose of the general rule against admitting hearsay. *Id.*

In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Id.* at 66, 100 S.Ct. at 2539 (footnotes omitted).

The Court's subsequent opinion in *Inadi, supra,* 475 U.S. 387, 106 S.Ct. 1121, does not undermine the validity of the general approach set forth in *Ohio v. Roberts.* In *Inadi,* the Court addressed the narrow question of "whether the Confrontation Clause requires a showing of unavailability as a condition to admission of the out-of-court statements of a nontestifying co-conspirator, when those statements otherwise satisfy the requirements of [the hearsay exception]." 475 U.S. at 391, 106 S.Ct. at 1124. The Court emphasized that *Ohio v. Roberts,* by its own terms, had not purported to set forth an inflexible rule, and "cannot fairly be read to stand for the radical proposition that no out-of-court statement can be introduced by the government without a showing that the declarant is unavailable." *Id.* at 394, 106 S.Ct. at 1125. That declaration, which is simply a restatement of the acknowledgement in *Ohio v. Roberts* that no bright-line test can be crafted to govern all cases involving the intersection of the Confrontation Clause and the hearsay exceptions, does not undermine the Court's steadfast view that *Ohio v. Roberts* continues to describe the correct "general approach," with exceptions to be made only in unusual circumstances.

Had the Court attempted in *Inadi* to confine *Ohio v. Roberts* to prior testimony, the opinion could have ended with the discussion of *Ohio v. Roberts.* Instead, the *Inadi* Court discusses at length the "good reasons why the unavailability rule, developed in cases involving former testimony, is not applicable to co-conspirators' out-of-court statements." *Id.* at 394, 106 S.Ct. at 1125–26. The reasons focus on the unique and irreplaceable nature of statements made while the conspiracy is ongoing, the

---

8. In *Idaho v. Wright, supra,* the Court was not presented with an issue relating to the unavailability of the child in deciding whether the child's out of court statements were admissible. 110 S.Ct. at 3147 (trial court's finding that child was incapable of communicating with jury was not at issue; only issue was reliability). In another case decided the same day, *Maryland v. Craig,* — U.S. —, 110 S.Ct. 3157, 3165, 111 L.Ed.2d 666 (1990), the Court also cited *Ohio v. Roberts* for the proposition that the Confrontation Clause expresses a constitutional preference for face-to-face encounters, but observed that the preference "must occasionally give way to con-

siderations of public policy and the necessities of the case."

9. The Court noted the complexity of reconciling Confrontation Clause and hearsay rules, and "reject[ed] the invitation to overrule a near-century of jurisprudence" by altering its basic approach to cases in this area. *Id.* 448 U.S. at 66 n. 9, 100 S.Ct. at 2539 n. 9. The Court also stated, however, that it had not sought to " 'map out a theory of the Confrontation Clause that would determine the validity of all … hearsay exceptions.' " *Id.* at 64–65, 100 S.Ct. at 2538 (quoting *California v. Green,* 399 U.S. 149, 162, 90 S.Ct. 1930, 1937, 26 L.Ed.2d 489 (1970)).

lack of benefit to be obtained from adopting a rule of unavailability, as well as the burdens that would result if such a rule were imposed. *Id.* at 394–98, 106 S.Ct. at 1125–28. This explanation would only be required if the Court found it necessary to explain its departure from an otherwise generally applicable rule.

Accordingly, in the absence of unique characteristics sufficient to justify a departure from the unavailability restriction set forth in *Ohio v. Roberts,* the Confrontation Clause requirements would not have been met,[10] and, in the instant case, in view of the critical nature of the evidence and the absence of any showing that the courtroom clerk was unavailable to testify, the error could not be deemed harmless.[11] *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). Yet this court's decisions would require a contrary conclusion.

In *Howard v. United States,* 473 A.2d 835 (D.C.1984), and thereafter in *Jones v. United States,* 548 A.2d 35 (D.C.1988), the court upheld against a Confrontation Clause challenge the admission of a chemist's report on the results of tests performed on samples of controlled substances seized from the defendant. Neither opinion suggested that the chemists who performed the tests and prepared the reports were required to testify in the absence of a showing of their unavailability. Instead, the *Howard* court proceeded on the basis of the observation that it is "well estab-

lished that certain types of hearsay are inherently reliable and *therefore* admissible as exceptions to the requirements of the Confrontation Clause." 473 A.2d at 838 (emphasis added) (citing *Ohio v. Roberts supra,* and *Mattox v. United States,* 156 U.S. 237, 243–44, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895), and C. McCormick, Evidence, §§ 252, 253 (2d ed. 1972)). Thereupon, the court proceeded to examine the reliability of the evidence, and was satisfied that the Confrontation Clause requirements were met because the chemists' reports were sufficiently trustworthy, containing objective facts and routinely prepared by a person who "generally d[id] not have an interest in the outcome of the trial" and acted pursuant to a duty to make accurate reports. *Id.* at 839. The court further observed that:

> The business and public records hearsay exceptions are among the exceptions that rest upon such solid foundations that admission of virtually any evidence within them comports with the substance of the constitutional protection.

*Id.* at 838. Turning to the unavailability restriction of *Ohio v. Roberts,* the court observed first, that the defendant was "not precluded from inquiring into the reliability of the testing procedure or the qualification of the chemist," ("[A] defendant is free to subpoena the reporting chemist without cost. Thus, a defendant is not substantially disadvantaged by the government's failure to call the out-of-court declarant and

---

**10.** Upon applying *Ohio v. Roberts,* it is at least doubtful whether special circumstances exist in the instant case to justify a departure from *Ohio v. Roberts'* restriction of unavailability. Unlike co-conspirator statements, public records are not unique evidence of the context of past events. *Inadi, supra,* 475 U.S. at 395, 106 S.Ct. at 1126. Instead, somewhat like prior testimony, they merely represent a "weaker version," *id.* at 394, 106 S.Ct. at 1126, of the same evidence that would be supplied by live testimony. In addition, application of the unavailability restriction would result in the production of additional relevant testimony, *see Inadi, supra,* at 396–97, 106 S.Ct. at 1126–27, since there would at least be direct testimony by the maker of the docket entries that he, in fact, made them.

**11.** The evidence of the docket entries, which, according to the supervisor, were made by Mr.

Baumgartner, was crucial to proving that appellant failed to appear; no other witness testified on this point, and no evidence other than the disputed hearsay provided corroboration of the supervisor's testimony. By contrast with the restricted cross-examination for bias at issue in *Delaware v. Van Arsdall, supra,* the evidence of Mr. Baumgartner's docket entries was not subject to cross-examination at all. The instant case also is unlike *Harrison v. United States,* 435 A.2d 734 (D.C.1981) (en banc) (spontaneous utterance exception to the hearsay rule), where it was noted that while the hearsay evidence provided an element of the offense (whether the defendant had taken something of value) that fact was "virtually evident from the eyewitness account itself." 435 A.2d at 739 (Ferren, J., concurring).

confrontation rights are effectively observed."), and second, that the legislature, in providing for admission of chemists' reports without the presence at trial of the chemist, has noted the burden of calling chemists as witnesses at trial to vouch for the chain of custody of the report where the results of the chemists' report are not in dispute. *Id.* at 839. *Jones, supra,* in turn, simply relied on *Howard,* stating:

> Having concluded that the EMIT test results are presumptively reliable and thus properly admissible into evidence, and that the Agency's record reporting the test result falls within the business records exception to the hearsay rule ... we believe it is immaterial that neither a scientific expert on the EMIT system nor the technician who actually conducted the test was presented at trial.

*Jones, supra,* 548 A.2d at 47 (citations omitted).

To the extent that this court has viewed *Ohio v. Roberts* as leaving open the possibility that upon "a showing of particularized guarantees of trustworthiness," 448 U.S. at 66, 100 S.Ct. at 2539, evidence would be admissible without regard to a showing of unavailability, the court has adopted an analysis yet to appear in Supreme Court decisions. At first blush there appears to be a suggestion in a footnote in *Ohio v. Roberts, supra,* 448 U.S. at 66 n. 8, 100 S.Ct. at 2539 n. 8, that business and public records would be admissible without regard to the unavailability of the declarant. 448 U.S. at 66 n. 8, 100 S.Ct. at 2539 n. 8 (citing to Comment, 30 LA.L.REV. 651, 668 (1970)). But the reference cited by

the Court concludes that in order to prevent abuse in the treatment of these exceptions:

> courts should start with the proposition that as a general rule confrontation prohibits the use of business or agency records in criminal trials. However, there are cases in which the records have very high probative value and should be used. Certainly, before considering the evidence the Court should require a showing that the witness who made the record is absent and that a good faith effort to procure his attendance has been made. Then, weighing the probable reliability of the records, their significance in proving the charge against the defendant, and the seriousness of the charge the evidence would be admitted at the court's discretion.

30 LA.L.REV. at 668–69.[12]

While there may on occasion be language in Supreme Court decisions to suggest that the Court is placing greater emphasis on "the necessities of trial and the adversary process" than on "[t]he central concern of the Confrontation Clause ... to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact," *see, e.g., Maryland v. Craig, supra* note 1, 110 S.Ct. at 3165–66, the Court continues to emphasize that the face-to-face confrontation requirement is not easily dispensed with, and is only disposed of when "necessary to further an important public policy and only where the reliability of the testimony is

---

**12.** The Comment discussed *United States v. Holmes,* 387 F.2d 781 (7th Cir.1967), *cert. denied,* 391 U.S. 936, 88 S.Ct. 1835, 20 L.Ed.2d 856 (1968), involving a conviction for failing to report for conscientious objector civilian work based on a note that the defendant had not reported as ordered:

> The note which apparently was sent the Selective Service Board by the civilian employer was not dated or signed and there was no indication who wrote and mailed it. It seems clear that the defendant had no opportunity to cross examine the witness against him and indeed did not even know who the witness was. It is equally clear that the circumstances surrounding the note do not protect the defendant's right of confrontation.

30 LA.L.REV. at 668 (citing, inter alia, *Morales v. Superior Court,* 239 Cal.App.2d 947, 49 Cal.Rptr. 173 (1966) (reliance on clerk's reports of tardiness in contempt proceedings possibly denied contemnor the right of confrontation), and *State v. Tims,* 9 Ohio St.2d 136, 224 N.E.2d 348 (1967) (document labelled "Report of Examination for Alleged Rape" was admitted at statutory rape trial; confrontation violated). *Contra, McDaniel v. United States,* 343 F.2d 785 (5th Cir.1965) (admission of business records is largely discretionary with the trial court); *Kay v. United States,* 255 F.2d 476 (4th Cir.), *cert. denied,* 358 U.S. 825, 79 S.Ct. 42, 3 L.Ed.2d 65 (1958).

386

otherwise assured." *Id.* at 3166 (citing, *inter alia, Coy v. Iowa,* 487 U.S. 1012, 1021, 108 S.Ct. 2798, 2803, 101 L.Ed.2d 857 (1988)). *See id.* 110 S.Ct. at 3167 ("The critical inquiry in this case, therefore, is whether use of the procedure [one-way closed circuit television in case involving child abuse victim] ... is necessary to further an important state interest. We ... conclude today that a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court."). No such "important state interest" or necessity has been suggested in the instant case; rather, administrative convenience has prevailed in the absence of a claim by appellant disputing the accuracy of the docket entries.[13]

Accordingly, because I am unable to join the majority's rationale for dispensing with the unavailability requirement, but am bound by our decisions in *Howard, supra,* and *Jones, supra,* I concur in the affirmance of the judgment of conviction for willfully failing to appear. *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).

---

**13.** In *Inadi, supra,* the Court concluded that administrative burdens outweighed any benefits to be gained from confrontation only after concluding that there were no benefits to be gained. 475 U.S. at 398, 106 S.Ct. at 1127. Thus, balanced against nonexistent benefits from a requirement of live testimony, the administrative burdens associated with such a requirement tipped the scales. However, there is nothing in *Inadi* to suggest that administrative convenience could outweigh substantive benefits of confrontation where such benefits are found to exist in a particular case.