Carlton N. BANKS, Appellant,

v.

H. Albion FERRELL et al., Appellees.

No. 14170.

District of Columbia Court of Appeals.

Argued Nov. 15, 1979.

Decided Dec. 4, 1979.*

Stephen R. Lohman, appointed by the court, for appellant.

Margaret L. Hines, Asst. Corp. Counsel, with whom Judith W. Rogers, Corp. Counsel, Richard W. Barton, Deputy Corp. Counsel, and Joan Slous, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before KELLY, HARRIS, and FERREN, Associate Judges.

FERREN, Associate Judge:

Appellant challenges the trial court's denial of his "motion for injunctive relief." Finding this action barred by the limitations of the case or controversy doctrine, we affirm.

## I.

Appellant Carlton N. Banks began serving a two-to-six year sentence at Lorton Reformatory for forgery in mid-1976, with a parole eligibility date of November 8, 1977. On or about November 3, 1977, Banks appeared before the D.C. Parole Board (Board) to be considered for parole.[1]

---

* This decision was originally released as a Memorandum Opinion and Judgment on December 4, 1979, and is published by request of counsel.

1. Charles J. Williams, Correctional Treatment Specialist at Lorton, submitted an affidavit stating that in early October 1977 he orally informed Banks that "he [Banks] was scheduled to appear before the D.C. Parole Board in the near future and that I was not recommending parole at this time." Banks denies receiving such notice.

*See* D.C.Code 1973, § 24–204; 9 DCRR §§ 101, 102. On that same date, the Board denied Banks' application for parole and scheduled another hearing for November 1978. This action was taken, according to the Board, because Banks (1) had accomplished very little in terms of institutional involvement and (2) was awaiting sentencing by Federal District Court Judge George L. Hart on another charge. The Board forwarded notice of its decision to Banks on November 9, 1977.[2] On December 9, 1977, Judge Hart sentenced Banks to one-to-three years' imprisonment for possession of stolen mail matter, 18 U.S.C. § 1708 (1976), and ordered that the sentence be served consecutively to Banks' forgery sentence. On June 20, 1978, Banks filed a *pro se* petition for a writ of habeas corpus, D.C. Code 1973, § 16–1901, alleging he was illegally confined to Lorton. His petition was based on the following three alleged denials of due process surrounding his November 1977 parole hearing: (1) he was not given pre-hearing notice; (2) he was not given an opportunity to review materials on file with the Board prior to the hearing; and (3) he was not given timely notice of the Board's decision after the hearing.

On June 23, 1978, Judge Mencher *sua sponte* entered an order dismissing the petition and directing that "it be treated in the alternative as a Motion for Injunctive Relief." A hearing on the motion was set for October 25, 1978, at which time Judge Pryor denied Banks' motion without stating reasons.[3] Banks filed a notice of appeal on November 2, 1978. Later that month, the Board held a second hearing on Banks' case and transferred him pursuant to a federal detainer lodged against him for violating parole on a 1972 federal charge.[4] Appellant does not challenge the procedures at this second hearing.

## II.

■ Banks contends that (1) he was denied constitutionally required procedural safeguards in his first parole hearing,[5] and (2) the trial judge's summary denial of the "Motion for Injunctive Relief" was improper where, as here, there were disputed material facts. We do not reach these contentions, however, because it is well-settled that a court's decisions of constitutional dimension should be made only as specifically required by the facts of an actual controversy. *See, e. g., Leiss v. United States,* D.C.App., 364 A.2d 803, 807 & n. 4 (1976), *cert. denied,* 430 U.S. 970, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1977).

The Article III case or controversy doctrine[6] has been applied to limit the judicial

2. Banks claims that it was not until February or April 1978 that he received notice of the Board's decision to deny his parole request.

3. The record does not indicate that Banks was either present or heard before Judge Pryor ruled on the motion. In his brief, appellant's counsel states that Banks "never appeared in court and was never given an opportunity to present his evidence or argue his case. The complaint was apparently dismissed on the pleadings."

4. In January 1979, Banks was transferred from Lorton to a federal prison in Danbury, Connecticut, where he is currently confined. He has been given a tentative parole date by the United States Parole Board of February 1980. Banks' request for a transfer back to Lorton for the remainder of his sentence was recently rejected.

5. In this regard, appellant relies on the recent Supreme Court decision in *Greenholtz v. Inmates of Neb. Penal & Correctional Complex,*

442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). In view of our disposition of this case, we express no view on the questions (1) whether the D.C. statute, D.C.Code 1973, § 24–201a, and its implementing regulations, 9 DCRR § 100 *et seq.,* afford inmates a sufficient expectancy of release to entitle them to "some measure of constitutional protection," *Greenholtz, supra* at 2106 or (2) whether, assuming the D.C. statute does implicate due process, the government's alleged denials of Banks' rights are unconstitutional.

6. Under Article III, § 2 of the United States Constitution, the judicial power of the federal courts extends "to all Cases" of three specified types and to "Controversies" of six other types. C. Wright, Law of Federal Courts § 12 (2d ed. 1970). The rule against judicial rendering of advisory opinions stems from "the implicit policies embodied in Article III." *Flast v. Cohen,* 392 U.S. 83, 96, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). *See generally id.* at 94–97, 88 S.Ct. at 1949–1951; Wright, *supra* at § 12.

power of the local courts in the District of Columbia, even though Congress established our courts under its Article I powers.[7] In *Price v. Wilson,* D.C.Mun.App., 32 A.2d 109, 110 (1943), the District of Columbia Municipal Court of Appeals said it was inappropriate for a reviewing court "to adjudicate the merits of the appeal . . . merely to record [its] views concerning a controversy which no longer exists and to rule on a question which has become moot and purely academic."[8] *See Wise v. Murphy,* D.C.App., 275 A.2d 205, 227 (1971) (en banc) (Gallagher, J., dissenting).

██ In the present case, Banks has had a second parole hearing, of which he does not now complain; he is currently in a federal prison and, in all likelihood, will not return to the jurisdiction of the District of Columbia Parole Board until he is released from Danbury (sometime after February 1980). *See* note 4 *supra.* Thus, there is no firm basis for concluding that Banks will be subject, once again, to District of Columbia parole procedures. His argument that he *"may* again appear before the D.C. Parole Board and that his constitutional rights will again be violated" (emphasis added) is speculative. We view Banks' situation as being closer to that of the respondent in *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (one whose temporary parole had ripened into a complete release from supervision has no interest whatever in the procedures for granting parole) than

tha̓ of appellant-inmates who challenged the procedure by which the U.S. Bureau of Prisons adopted regulations in *Ramer v. Saxbe,* 173 U.S.App.D.C. 83, 91, 522 F.2d 695, 703 (1975) ("[w]hether actually incarcerated or in parole or mandatory release status, the appellants continue subject to the rules and regulations of the Bureau of Prisons").

██ Furthermore, even if we assume that the first hearing did, in fact, violate appellant's due process rights, he has failed to show that he was prejudiced by the absence of the allegedly required safeguards. Banks did not deny that, at the time of the first hearing (November 1977), (1) he was awaiting sentencing on a charge of possession of a Treasury check, (2) there was a federal detainer (resulting from a prior forgery conviction) outstanding against him, or (3) he had been placed in maximum security for disciplinary reasons while he was incarcerated at Lorton. Appellant asks us to speculate, first, that if the D.C. Board had accorded him full due process, he would have been paroled after the first hearing despite these facts, and, second, that Judge Hart would have given him a lesser—or at least a concurrent—sentence based on the fact that he had already been paroled by the D.C. Board. Any finding in appellant's favor on the merits, therefore, would have to rest on "double-speculation."

---

7. In *Palmore v. United States,* 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973), the Supreme Court affirmed the view that the courts of local jurisdiction in the District of Columbia—established pursuant to Article I of the Constitution—are not bound by the judicial salary and tenure restrictions of Article III. We have concluded from this holding that "the courts of local jurisdiction of the District of Columbia, established by Congress pursuant to Article I, are not bound by the requirements of Article III." *D. C. v. Walters,* D.C.App., 319 A.2d 332, 338 n. 13 (1974). Although it is, therefore, true that the judicial power of the local D.C. courts may extend beyond the case or controversy requirement, "this court [the District of Columbia Court of Appeals] has followed the principles of standing, justiciability and mootness to promote sound judicial economy and has recognized that an adversary system can best adjudicate real, not abstract conflicts. *Basiliko v.*

*District of Columbia,* D.C.App., 283 A.2d 816, 818 (1971); *Atkins v. United States,* D.C.App., 283 A.2d 204, 205 (1971); *Price v. Wilson,* D.C.Mun.App., 32 A.2d 109 (1943)." *Walters, supra* at 338 n. 13. *See* D.C.Code 1973, § 11–705; *United States v. Cummings,* D.C. App., 301 A.2d 229, 231 (1973).

8. Under the case or controversy doctrine, questions sought to be adjudicated have been held nonjusticiable for various reasons, including: "when the parties seek adjudication of only a political question, when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action." *Flast, supra* at 95, 88 S.Ct. at 1950 (footnotes omitted).

We conclude, under these circumstances, that any decision we—or the trial court—were to reach on the merits of this appeal would serve merely as an advisory opinion. *See Wise, supra; Price, supra;* note 7 *supra. See generally* Wright, *supra* at § 12. We therefore decline to rule on the constitutionality of the Board's practices and procedures and perceive no basis for remanding the case for further proceedings.

*Affirmed.*