**Earl J. WOODWARD, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 92–CF–295.**

District of Columbia Court of Appeals.

Submitted Feb. 12, 1993.
Decided June 21, 1993.

---

David H. Reiter, Arlington, VA, was on the brief for appellant.

Edward F. McCormack Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, and John R. Fisher, Thomas C. Black and John G. Horan, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before ROGERS, Chief Judge, and TERRY and KING, Associate Judges.

KING, Associate Judge:

Appellant was convicted of possession with intent to distribute cocaine, in violation of D.C.Code § 33–541(a)(1) (1989). On appeal, appellant contends that: (1) his due process rights were violated when the trial court denied him the opportunity to call a government witness who had already testified and been cross-examined by his counsel, and (2) the trial court erred by failing to make an on-the-record inquiry of him to ensure that he had made a knowing, intelligent and voluntary decision not to testify. We reject both contentions, and affirm.

## I.

The government's evidence revealed that Officer Robinson observed appellant in what appeared to be a craps game on the corner of 23rd and Savannah Streets, S.E., in the early morning of June 1, 1991. Officer Robinson then left that location to obtain assistance. When Robinson returned with other officers, he observed appellant take a Sucrets box from his sock and start running. Similarly, Officer Ruiz testified that he saw appellant take a white object from his pants and place it on the ground before running from the area. Appellant was also observed throwing money as he ran. The Sucrets box, which contained small ziplock bags filled with cocaine, was recovered by Officer James King within 45 seconds of appellant's departure from the scene. Appellant was ultimately apprehended by Officer Driver, who pursued appellant (on motorcycle) after Driver was informed by Robinson that appellant had discarded what appeared to be contraband. Officer Driver testified that he did not himself see appellant discard the contraband,

and that he first saw appellant as appellant was running from the scene.

Appellant did not testify. The defense called a single witness, however, who testified that he was present during the craps game. The witness further testified that when the police arrived, appellant grabbed the money from the craps game and, along with a number of other people, ran from the area. The witness also testified that he never lost sight of appellant and that appellant neither removed any object from his sock nor placed anything on the ground.

After the government rested, appellant's counsel informed the trial court that he intended to call Officer Driver, the officer who had apprehended appellant, and who had previously testified during the government's case-in-chief. Government counsel objected, stating that it seemed to be a "second attempt of cross-examination of Officer Driver...." After a proffer was requested, defense counsel explained that he believed that Officer Driver's testimony in court that day differed from his testimony during a previous appearance in the same case. Specifically, counsel proffered that Driver had earlier testified that when he entered the area of the craps game, he observed appellant take a package out of his sock, place it on the ground, and start running. When questioned by the trial court why he had not impeached the officer with this information during cross-examination, counsel conceded that he should have done so, but explained that he wanted to confirm his thoughts with the actual transcript. The trial court sustained the government's objection, ruling that what appellant sought to do was not direct examination, and that "[t]his is not anything that you should call him for in your own case...."

## II.

■ Appellant contends that his due process rights were violated when the trial court denied him the opportunity to call Officer Driver as his own witness. We disagree. By defense counsel's own admission, Officer Driver was being called as a defense witness for the purpose of im-peaching his testimony with a prior inconsistent statement. Impeachment of this nature, however, is proper during cross-examination of the witness but not during direct examination. *See Fletcher v. United States,* 524 A.2d 40, 43 (D.C.1987) (impeachment of a party's own witness is "strictly limited" to the situation where the witness's testimony takes the party by "surprise"). What appellant was seeking to accomplish was no more than further cross-examination of Officer Driver; and a trial court has broad discretion in deciding whether to allow a party to reopen cross-examination. This court will reverse a trial court's decision not to allow a reopen of cross-examination only for an abuse of discretion. *See Coleman v. United States,* 515 A.2d 439, 449 (D.C.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 205 (1987). Since appellant was given the opportunity to cross-examine the witness when the witness first testified, and sought only to further impeach that testimony when calling the witness as his own, the trial court did not abuse its discretion in denying appellant the opportunity to recall the witness. *See Singletary v. United States,* 383 A.2d 1064, 1073 (D.C.1978) ("once a party has had an opportunity substantially to exercise the right of cross-examination, the extent of further cross-examination is within the sound discretion of the trial court") (citations omitted).

## III.

■ Appellant also contends that he is entitled to a hearing before the trial judge in order for the judge to determine whether he "made a knowing and voluntary waiver of his right to testify." Specifically, appellant claims that *Boyd v. United States,* 586 A.2d 670 (D.C.1991), requires that a trial judge engage in an on-the-record colloquy with a non-testifying defendant in order to ensure that the defendant made a knowing and intelligent waiver of his right to testify. We reject appellant's contention for two reasons. First, appellant has never claimed that he did not knowingly waive his right to testify, and second, this court has never held that the trial court has a

*sua sponte* duty to make an on-the-record inquiry to determine if a defendant waived that right.

A review of the record reveals that at no time during trial did appellant express to the trial court a desire to testify. Similarly, there are no post-trial motions in the record in which appellant claimed that he did not waive his right to testify. The record does contain, however, a four-page letter written to the trial judge, prior to sentencing, in which appellant stated, "[y]es I was found to be guilty, but that does not mean I was guilty." The remainder of the letter explains appellant's economic and family circumstances, and is basically a request for leniency. Despite the opportunity to do so, appellant never claimed in the letter that he desired to testify at trial, or that he was prevented from doing so.

Moreover, appellant does not claim in this court that he did not knowingly waive his right to testify. Acknowledging that he did not make an on-the-record demand to testify on his own behalf, appellant argues in his brief that *"a defendant may* be unaware that he or she has a constitutional right to testify" (emphasis added). He also argues that if he were required to demand his right to testify at trial, the result would be a requirement that he must "assert a right of which he *may or may not* be aware...." Appellant is, of course, now aware that he had a right at his trial to testify if he wished to. Even so, he still makes no claim that he was unaware of his right to testify during trial, or that he did not make a knowing waiver.

Appellant correctly observes that a defendant is not required during the trial to make an on-the-record demand to testify in order to preserve that right for appeal. This court has rejected the so-called "demand rule," which holds that a defendant who fails to complain about the right to testify during trial is conclusively presumed to have waived that right. *See Boyd, supra,* 586 A.2d at 677 (holding that the demand rule is fatally flawed). By requiring appellant to raise the issue of non-waiver at some stage of the proceed-

ings, however, we are not adopting the demand rule. Instead, we are simply holding that a defendant must properly raise the issue of non-waiver *at some point*—not necessarily during trial—before the trial court will be required to perform an inquiry to determine whether the defendant has adequately waived his right to testify. *See id.* at 676–77.

■ Here, appellant did not claim at any time during the trial, in any post-trial motions, or even in his brief in this court, that he did not knowingly waive his right to testify. Where a defendant has made no claim of non-waiver in the trial court, we are not obligated to consider any asserted failure on the part of the trial judge to make an inquiry. *See Kelly v. United States,* 590 A.2d 1031 (D.C.1991) (trial court addressed whether defendant waived his right to testify when defendant raised the issue during a post-trial hearing for a new trial); *Hunter v. United States,* 588 A.2d 680 (D.C.) (trial court conducted a hearing after the defendant filed a motion to vacate and for new trial under D.C.Code § 23–110 (1989) in which defendant alleged that he did not voluntarily waive his right to testify at trial), *cert. denied,* — U.S. —, 112 S.Ct. 256, 116 L.Ed.2d 210 (1991); *Boyd, supra,* 586 A.2d at 677 (when the defendant informed the trial court after the jury returned its verdict and again at sentencing that she had wanted to testify at trial, the trial court had a duty to determine whether the defendant made a knowing and intentional waiver). We have held that where an issue was not presented in the trial court, this court will not consider it for the first time on appeal in the absence of a clear showing of a miscarriage of justice. *See Hall v. United States,* 343 A.2d 35, 37 (D.C.1975). No such showing has been made here. Appellant has never contended, in the trial court or in this court, that he did not understand he had a right to testify if he wanted to. We decline to consider appellant's contention under those circumstances.

■ Further, we have observed, in *dictum,* that while the trial court does not have "a *sua sponte* obligation to inquire of

a non-testifying defendant before the defendant rests whether the defendant has waived the right to testify, it behooves the trial court to make such an on-the-record inquiry in order to avoid issues on appeal and collateral attacks." *Kelly, supra,* 590 A.2d at 1033 (quoting *Boyd, supra,* 586 A.2d at 678); *see also Hunter, supra,* 588 A.2d at 681–82. Appellant contends that the quoted language imposes a duty upon the trial court to engage a defendant in an on-the-record colloquy to ensure that the waiver of a defendant's right to testify is knowing and intelligent. Some courts have required the trial judge to engage in such a colloquy, while others have expressly held that no such inquiry is required. *See Boyd, supra,* 586 A.2d at 676–77, and cases cited therein. This court, however, has never imposed such a requirement and we do not do so now. It may well be that a routine inquiry of this nature might be a prudent course of action by trial judges. Certainly a full on-the-record inquiry would likely eliminate later claims by those convicted that they were either or misinformed concerning their right to testify. Our review of the authorities, however, does not persuade us that we should mandate an on-the-record colloquy so long as an appropriate inquiry is made once the defendant raises a post-conviction challenge based on a claimed denial of the right to testify. *See Boyd, supra,* 586 A.2d at 676–77.

*Affirmed.*

ROGERS, Chief Judge, concurring:

I write separately simply to clarify that the holding of the court is only that in the absence of a claim by appellant at any time, including appeal, that he was denied the right to testify at his trial, this court has no occasion to hold that the trial court had a *sua sponte* duty to conduct an inquiry into whether or not appellant had waived his right to testify. *See Banks v. Ferrell,* 411 A.2d 54, 55–56 & n. 7, 57

(D.C.1979); *Smith v. Smith,* 310 A.2d 229, 231 (D.C.1973). Thus, it remains for the court to decide, when a claim is presented that a defendant's right to testify has been unlawfully denied, whether the trial court has a *sua sponte* duty to conduct an inquiry in order to assure the protection of the fundamental constitutional right of the defendant to testify at his or her trial.[1] *Rock v. Arkansas,* 483 U.S. 44, 49–52, 107 S.Ct. 2704, 2707–10, 97 L.Ed.2d 37 (1987); *Boyd, supra* note 1, 586 A.2d at 672–74 (and cases cited). It bears repeating, however, that the issue in this appeal, and in several other appeals before the court,[2] could have been avoided had such an inquiry been made. *See Boyd, supra,* 586 A.2d at 676 ("We take this occasion … to advise the trial court and the Bar … [that] it behooves the trial court to make such an on-the-record inquiry in order to avoid issues on appeal and collateral attacks") (footnote and citations omitted).

---

**1.** In neither *Kelly v. United States,* 590 A.2d 1031 (D.C.1991), nor *Boyd v. United States,* 586 A.2d 670 (D.C.1991), did the court hold that the trial court does *not* have a *sua sponte* duty to enquire. *See Kelly, supra,* 590 A.2d at 1033; *Boyd, supra,* 586 A.2d at 677.

**2.** *See, e.g., Kelly, supra* note 1, 590 A.2d 1031; *Hunter v. United States,* 588 A.2d 680 (D.C.), *cert. denied,* —— U.S. ——, 112 S.Ct. 256, 116 L.Ed.2d 210 (1991).