**Jerome Anthony JACKSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 05–CM–1256.**

District of Columbia Court of Appeals.

Argued Feb. 28, 2007.

Decided May 17, 2007.

---

Phillip John Collins, appointed by the court, for appellant.

Robert E. Leidenheimer, Jr., Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, Roy W. McLeese III and Lisa H. Schertler, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and THOMPSON, Associate Judges, and STEADMAN, Senior Judge.

STEADMAN, Senior Judge:

After a bench trial, Jerome Jackson was convicted of a violation of the Bail Reform Act, D.C.Code § 23–1327(a) (2001), for failing to appear at a status hearing on a separate criminal charge. On appeal, Jackson claims that the trial court's admission of certified copies of the docket entries and the Notice to Return to Court contained in the District of Columbia Superior Court records violated his Confrontation Clause rights under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and the Sixth Amendment to the United States Constitution.[1] We conclude that these items did not constitute "testimonial" statements within the purview of the Confrontation Clause, and accordingly we affirm.

## I.

At Jackson's bench trial on July 22, 2005, the government sought to prove a violation of the Bail Reform Act by showing (1) that Jackson had been released pending further criminal proceedings, (2) that Jackson was required to appear in court on a specific date, (3) that Jackson failed to appear, and (4) that this failure to appear was willful. *See Goldsberry v. United States*, 598 A.2d 376, 382 (D.C. 1991); *see also* D.C.Code § 23–1327(b) ("Any failure to appear after notice of the appearance date shall be prima facie evidence that such failure to appear is willful."); *accord Raymond v. United States*, 396 A.2d 975, 976–77 (D.C.1979). Accordingly, Superior Court employee Alonzo Wiggins, who was qualified without objection as an expert in Superior Court courtroom procedure, was called to the stand to lay a foundation for the admission of the government exhibits which are challenged on this appeal. For both exhibits, Mr. Wiggins identified the documents as certified copies of Superior Court records and testified that the records appeared to have been made in conformity with normal courtroom procedures.

The first of these exhibits, marked Government Exhibit Number 1, consisted of certified photocopies of three pages from the Superior Court case file in criminal case number M–841–05, the second page of which included two relevant docket entries dated February 17, 2005, and February 24, 2005. The February 17th entry contained checked boxes indicating that the defendant "is present" and that the "Defendant [was] Advised of Penalties for Failure to Appear" and showed the "continued date" of 2–24–05. The February 24th entry contained a checked box indicating that the defendant "is not present" and included a handwritten note indicating that the defendant had failed to appear. Each of the entries was signed with the initials of the courtroom clerk who made the entry.[2]

---

1. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI.

2. Defense witness Russell Barbie, a courtroom clerk, testified that he had made the

February 17, 2005, docket notation indicating that Jackson had been informed of his duty to return to court. Mr. Wiggins, the expert witness, testified that he recognized the initials on the February 17, 2005, docket entry as those of Mr. Barbie and the initials on the February 24, 2005, docket entry as those of

■ The second exhibit, marked Government Exhibit Number 2, consisted of, *inter alia*,[3] a certified photocopy of a one-page document from the court records entitled "Notice to Return to Court," dated February 17, 2005. This standard printed form included blanks that were completed with handwritten case-specific details, including the date and time of the next scheduled court appearance (February 24, 2005, at 9:30 a.m.), the name of the presiding judge (Johnson), and the courtroom number and location (Courtroom 211 on the second level of the Superior Court). The document stated that "failure to appear promptly may result in the issuance of a warrant for your arrest" and noted the penalties for failure to appear as "5 years or $5,000 fine" for a pending felony charge or "180 days or $1,000 fine" for a pending misdemeanor or traffic charge. The document also contained signatures on the lines reserved for the Deputy Clerk (signed "Barbie") and the Defendant (containing an illegible signature and indicating "No Fix[ed] Address, 425 2nd Street N.W.").[4]

Defense counsel objected to the admission of the exhibits, invoking *Crawford* and the Sixth Amendment Confrontation Clause. The trial court, however, ruled that the records did not contain "testimonial statement[s] precluded by *Crawford*" and admitted the exhibits pursuant to the "public record" hearsay exception. *See Goldsberry, supra,* 598 A.2d at 378–79. Mr. Wiggins then reviewed the exhibits and testified that they reflected that Jackson had been informed of his February 24, 2005, court date, had signed a Notice to Return to Court reflecting that court date, and had failed to appear on that date. The trial court subsequently convicted Jackson of violating the Bail Reform Act and sentenced him to ninety days in jail, suspended except for time served, and six months of unsupervised probation.

## II.

Jackson's primary contention on appeal is that his rights under the Confrontation Clause of the Sixth Amendment, as construed in *Crawford, supra,* were violated because the trial court admitted into evidence the certified copies of the Superior Court docket entries and the Notice to Return to Court without testimony from the court clerk who created the records.[5]

---

another courtroom clerk, Julio Delgado, who was not called as a witness at trial.

**3.** The other document in Exhibit 2 was a certified copy of the bench warrant that was issued after Jackson failed to appear. He does not challenge on appeal with any specificity the introduction of this document. In fact, in our view, this document presents no Confrontation Clause concern. Rather than establishing past facts that underlie a criminal charge for purposes of future prosecution, the warrant indicates only what appellant has been *charged* with. Furthermore, the warrant's primary purpose, plainly expressed through its text, is to notify the United States Marshal and Chief of Police of the District of Columbia that they have both the power and responsibility to arrest appellant and bring him forthwith before the court—that is, to command police assistance with an ongoing

set of circumstances, rather than to document information for future prosecution. *Cf. Davis v. Washington,* —— U.S. ——, —— - ——, 126 S.Ct. 2266, 2273–74, 165 L.Ed.2d 224 (2006).

**4.** Jackson, on cross-examination, admitted that the signature on the Notice to Return to Court looked like his signature but that he could not be certain because the signature did not legibly show his name.

**5.** It is our understanding that the handwritten docket entries that were traditionally made in Superior Court case files, sometimes colloquially known as "jacket entries," are being phased out in favor of an electronic docketing system, and indeed both records may exist in certain cases that span the transition period. We consider these handwritten and electronic docket entries to be indistinguishable for Confrontation Clause purposes.

■ We previously have squarely held that docket entries and similar certified court records may be admitted under the public records exception to the hearsay bar without violating the Confrontation Clause. *See Goldsberry, supra,* 598 A.2d at 381–82.[6] We also held in *Goldsberry* that a Notice to Return to Court is not hearsay because it is admitted to show notice and not for the truth of the matter asserted, and thus its admission does not implicate the Confrontation Clause.[7] *Id.* at 380, 382. However, a finding that a statement falls within a hearsay exception does not now end the inquiry under the Confrontation Clause. *See Thomas v. United States,* 914 A.2d 1, 13–14 (D.C. 2006) ("*Crawford* divorced the Confrontation Clause from the rules of hearsay.") Because our opinion in *Goldsberry* predates the Supreme Court's decision in *Crawford,* we turn to Jackson's argument that the principles of *Crawford* barred the introduction of the court records in his case.

■ The Sixth Amendment Confrontation Clause forbids the "admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination" of the witness. *Crawford, supra,* 541 U.S. at 53–54, 124 S.Ct. 1354. In the present case, because Jackson had no prior opportunity to cross-examine the declarant clerk and no foundation was laid to demonstrate that the clerk was unavailable, if the records are "testimonial" statements under *Crawford,* then their admission violated Jackson's rights under the Confrontation Clause.

■ In *Crawford,* the Court expressly left open the meaning of "testimonial." *Id.* at 68, 124 S.Ct. 1354. Broadly speaking, however, "testimonial" is understood in functional rather than categorical terms, focusing "on the primary anticipated or intended use of the statement, not on whether the statement qualifies as an exception to the rule against hearsay or falls into some other arbitrary testimonial category." *Thomas, supra,* 914 A.2d at 14; *see Davis, supra* note 3, 126 S.Ct. at 2273–74 (distinguishing between nontestimonial statements "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" and testimonial statements given "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution"). Thus, in *Thomas,* we held that "because DEA chemist's reports are created expressly for use in criminal prosecutions as a substitute for live testimony against the accused, such reports are testimonial, whether or not they happen to meet this jurisdiction's definition of a business record." 914 A.2d at 14.

■ In contrast to the primary purpose of the DEA chemist reports at issue in

---

6. For a record to be admissible under the public record hearsay exception, the record must be authenticated as an official record of the governmental body in question and the proffering party must demonstrate that "the facts stated in the document are within the personal knowledge and observation of the recording official" and that "the document is prepared pursuant to a duty imposed by law or implied by the nature of the office."

*Goldsberry, supra,* 598 A.2d at 378 (citations omitted).

7. We also said that, in any event, even if the Notice was intended to prove the truth of the matter asserted therein, the Notice would be admissible as a public record for the same reason that the docket entries were admissible. *Goldsberry, supra,* 598 A.2d at 380, 382.

*Thomas,* the *primary* purpose for which the docket entries and the Notice to Return were created in the present case was not to document facts or events for future prosecution, but rather to satisfy administrative functions necessary to the operation of the court. Although such records as docket entries ultimately may be useful in future litigation, their main purpose is to keep track of the proceedings, especially in a high-volume court. *See Goldsberry, supra,* 598 A.2d at 381. The courtroom clerk has a legal duty to create "appropriate dockets and records of *all* papers and documents filed in the clerk's office and of *all* proceedings of the Court." Super. Ct. Crim. R. 55(a) (2006) (emphasis added); *Goldsberry,* 598 A.2d at 378, 378 n. 3. Such records are created and kept in the ordinary course of Superior Court operations prior to, and regardless of, later prosecution. Because the primary purpose of docket entries is to meet administrative needs rather than to document facts for future prosecution, the documents are not "testimonial" and their admission under the circumstances does not implicate the Confrontation Clause. *Cf. Davis, supra* note 3, 126 S.Ct. at 2273–74.

As already noted, in *Goldsberry,* we concluded that the Notice to Return was not even hearsay because of the limited purpose for which it was admitted. In *Crawford,* the Supreme Court indicated that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59 n. 9, 124 S.Ct. 1354. But, in any event, the Notice to Return, as its title indicates, is designed to provide official written *notice* to the defendant about his or her future court date(s) and to chronicle that such notice was given. Although, to be sure, written evidence of notice is helpful in later prosecutions for failure to appear and the document contains warnings about failure to appear and its consequences, the Notice to Return is

regularly given to all defendants not kept in custody in the normal course of court operations for reasons other than facilitating prosecution should they subsequently fail to appear (a relatively infrequent occurrence). At the time a Notice to Return is created, therefore, its primary purpose is not to replace live testimony in a speculative future prosecution, the predicate for which may never occur. *Cf. Thomas, supra,* 914 A.2d at 14. Consequently, for these several reasons, we conclude that a Notice to Return is not a testimonial statement under *Crawford* and related cases.

Our conclusion that the records were not testimonial is further bolstered by the observations that the records in question "did not result from an investigation, and [that] courtroom clerks are not 'law enforcement personnel.'" *See Goldsberry, supra,* 598 A.2d at 379; *see also United States v. Feliz,* 467 F.3d 227, 233–34 (2d Cir.2006) (holding that the New York medical examiner's routine autopsy reports are not testimonial because they are business records not made for purposes of litigation, even if the possibility of litigation is foreseeable in some instances, and they do not include observations made by law enforcement personnel). We also take note of a number of post-*Crawford* cases involving similar types of administrative records which have reached the same conclusion as we do here. *See United States v. Bahena–Cardenas,* 411 F.3d 1067, 1075 (9th Cir. 2005) ("[A] warrant of deportation is nontestimonial because it was not made in anticipation of litigation, and because it is simply a routine, objective, cataloging of an unambiguous factual matter."); *People v. Saffold,* 127 Cal.App.4th 979, 26 Cal. Rptr.3d 190, 193 (2005) (proof of service "is not a testimonial statement within the holding of *Crawford* "); *United States v. Salazar–Gonzalez,* 458 F.3d 851, 854 (9th Cir.2006) (certificate of nonexistence of record of permission to enter United

States is not a testimonial statement); *United States v. Cervantes–Flores,* 421 F.3d 825, 831 (9th Cir.2005) (same); *United States v. Rueda–Rivera,* 396 F.3d 678, 680 (5th Cir.2005) (same); *United States v. Lopez–Moreno,* 420 F.3d 420, 437 (5th Cir. 2005) (government agency records showing date of deportation are not testimonial statements).

Although a trial court may, at times, have difficulty determining the primary purpose for which records were created, in the present case the trial court was evaluating the familiar purpose of the same kinds of records that it creates every day. Furthermore, the trial court heard expert testimony before the records were admitted that suggested that the records were created primarily for administrative purposes. For example, expert witness Alonzo Wiggins testified that "[t]he courtroom clerk is responsible for various things—the management of the courtroom, the management of the judge's calendar, the calling of cases, the making of jacket entries[,] ... swearing defendants out on bond and ... giving them notice for continue dates, handling jury voir dire, jury selection process. It's various sundry duties." With regard to the docket entries in particular,

Mr. Wiggins testified that the clerk is required to record "the activity that took place[,] whether or not the defendant was present, counsel was present, prosecutor present—any parties that were present. . . . You would also make notations as to whether or not the defendant was advised of his or her obligations to reappear."

■ Because the challenged documents were created in the regular course of court operations, primarily for administrative purposes rather than with a primary eye towards future prosecution, we are satisfied that they did not constitute testimonial statements and that their admission did not violate Jackson's rights under the Confrontation Clause.[8]

*Affirmed.*

---

8. We also reject Jackson's second claim of error. The trial court informed Jackson before he testified that he had "an absolute right to testify or not to testify," that a decision to not testify could never be held against him, and that a decision to testify would mean "that the prosecutor will be able to ask you a whole bunch of questions on cross examination." Although Jackson indicated his understanding and desire to testify and failed to lodge any contemporaneous objection, he now contends that the judge plainly erred by failing to also advise him of the obvious effect of testifying: that his testimony and demeanor could be considered by the fact-finder and potentially held against him.

Although in *Boyd v. United States,* 586 A.2d 670, 678 (D.C.1991), we said that it "behooves" the trial court to make an on-the-record inquiry of a defendant who has indicated he will not testify in order to ensure a meaningful waiver of the constitutional right to testify, we have never concluded that such an inquiry is mandatory. *See, e.g., id.* at 677–78; *Woodward v. United States,* 626 A.2d 911, 914–15 (D.C.1993). Moreover, we have indicated doubt that any such inquiry need be made where the defendant is electing *to* testify. *See, e.g., Pinckney v. United States,* 906 A.2d 301, 307 (D.C.2006). Since no colloquy at all was mandated, the trial court clearly did not commit plain error by omitting the warning that appellant now contends was required. Here, Jackson was provided with correct information by the trial court in the limited colloquy that did in fact take place. Moreover, Jackson had the benefit of advice of counsel to aid his decision, had past experience in the criminal justice system, and chose to testify.