*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of appeals of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CM-100

TYRELL JOHNSON, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CMD-14462-18)

(Hon. Patricia A. Broderick, Trial Judge)

(Submitted January 14, 2020                    Decided July 16, 2020)

*Montrell L. Scaife* for appellant.

*Jessie K. Liu*, United States Attorney, with whom *Robert K. Platt*, Assistant United States Attorney, *Elizabeth Trosman*, *Suzanne Grealy Curt*, and *Carolyn Sweeney*, Assistant United States Attorneys, were on the brief, for appellee.

Before BECKWITH and MCLEESE, *Associate Judges*, and FERREN, *Senior Judge*.

FERREN, *Senior Judge*:  Appellant Tyrell Johnson challenges his conviction

after a bench trial for violation of the Bail Reform Act (BRA) for willfully failing

to appear at his initial status hearing on a simple assault charge.[1]  He asserts that the trial court:  (1) abused its discretion by allowing the courtroom clerk to testify without qualifying her as an expert witness; (2) further abused its discretion by admitting in evidence, without a proper foundation, the government's exhibits allegedly documenting his guilt; and thus (3) relied on insufficient evidence to convict him.  We affirm.

## I. Facts and Proceedings

According to the government's evidence, Officer Tiffany Williams of the Metropolitan Police Department (MPD) was investigating an unspecified crime for which she arrested appellant on the early morning of May 29, 2014.  After the arrest, Officer Williams prepared a police report, and appellant was assigned an MPD Identification Number (PDID number).[2]  That same day at his arraignment, the government charged appellant with simple assault, and the trial court released him after he signed a Release of Conditions Form, which required him to appear in

---

[1]  D.C. Code § 23-1327(a) (2012 Repl. & 2020 Supp.).

[2]  According to MPD Officer Jairo Zelaya, who arrested appellant in the present case, a "PDID number is issued to an individual once they have been arrested by our agency, the Metropolitan Police Department."

court on July 1, 2014, for an initial status hearing. Appellant, however, did not appear that day, and the trial court issued a bench warrant for his arrest.

Four years later, on September 30, 2018, Officer Zelaya arrested appellant while investigating another incident. Officer Zelaya performed a background check on appellant and noticed the outstanding bench warrant, whereupon appellant was charged with violating the BRA.

During a bench trial on January 30, 2019, the government sought to introduce three exhibits in evidence: (1) a printout of the CourtView version of the docket entry showing appellant's failure to appear at his first post-arraignment status hearing scheduled for July 1, 2014; (2) the Release of Conditions Form that appellant had signed at his arraignment on May 29, 2014; and (3) the bench warrant for appellant's arrest issued on July 1, 2014. To lay a foundation for the three exhibits, the government called Dominique Crowley, a courtroom clerk in the trial court, to testify "as an expert in court procedure." When the prosecutor asked Crowley to read the docket entry from CourtView, however, defense counsel

objected: "Just in qualifying [Crowley] as an expert, I would object."[3] The trial court nonetheless deferred ruling on the objection, admitted the copy of the docket entry from CourtView (Exhibit 1) in evidence without further objection, and allowed the government to proceed as follows with Crowley's direct examination.

*First,* Crowley answered general questions about courtroom procedures. She then identified appellant's docket entry from CourtView and confirmed that it was a certified copy. She further confirmed that the docket entry showed that appellant had initially appeared before the trial court on May 29, 2014, and that a bench warrant had been issued for his arrest for failure to appear in his next hearing on July 1, 2014.

*Second,* the prosecutor showed appellant's Release of Conditions Form to Crowley. She identified a certified copy of the form (Exhibit 2) and read portions of it designated by the prosecutor. She further testified that she could not tell from the court's copy whether appellant had received a copy of the form, but she added that, because a Release of Conditions Form has several carbon copies, appellant

---

[3] Defense counsel explained: "I don't believe the government noted an expert. And if they did, they certainly didn't note Ms. Crowley as an expert. . . . So far I haven't heard expert testimony, Your Honor."

"would have gotten the blue copy." Defense counsel asked to defer noting his objection to admission of the form until cross-examination. The trial court, however, asked counsel to "object now" and "do a voir dire, if you want to"; otherwise the form "comes in" as "a certified copy . . . under the rules" — whereupon defense counsel replied, "Understood, Your Honor."

*Third*, Crowley identified a certified copy of appellant's bench warrant (Exhibit 3), which the trial court admitted in evidence without objection and thus is not at issue here. On cross-examination Crowley acknowledged that she had not "personally witnessed" and thus had no "personal knowledge" that appellant had "failed to appear" in court on July 1, 2014.

Toward the end of the bench trial, defense counsel objected that Crowley's testimony that appellant had not attended court for the July 1, 2014, status hearing was "based upon her reading prior docket entries [and] court documents"; thus, it was "expert testimony," that is, her "interpretation" of the record. The trial court replied that she "didn't qualify [Crowley] as an expert . . . . The document can be read and all [Crowley] did was read it. I can read it . . . . She didn't interpret it." Overruling defense counsel's objection, the trial court then found appellant guilty

of the BRA charge and sentenced him to ninety days of incarceration followed by one year of supervised probation.  This timely appeal followed.

## II.  Standard of Review

We review a trial court's decision on admission of evidence for abuse of discretion.[4]   If, however, a defendant has failed to object at trial to evidence contested on appeal, we review for plain error.[5]  Appellant preserved his first claim of error by objecting to the trial court's failure to qualify the courtroom clerk as an expert witness. He failed, however, to object to the trial court's allowance of that testimony as proper foundation for admission of the government's exhibits.  Thus,

---

[4]  *Jenkins v. United States*, 80 A.3d 978, 989 (D.C. 2013).

[5]  *Thomas v. United States*, 914 A.2d 1, 8 (D.C. 2006) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) ("Under the test for plain error, appellant must show (1) that the admission of the chemist's report was "error," (2) that the error is "plain," and (3) that it affected appellant's "substantial rights. . . . If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.").

we review that ruling for plain error.[6]   Once these issues are resolved we can address sufficiency of the evidence.

## III.  The Merits

### A. "Expert" or "Lay" Testimony?

Appellant argues that Crowley's testimony, by its very nature, required specialized knowledge that necessitated her qualification as an "expert" (as the government had requested).[7]   The trial court ruled this unnecessary.   The court

---

[6]   As elaborated earlier, Defense counsel had objected to admission of Exhibit 1, the CourtView printout of the docket entry showing appellant's failure to appear at the July 1, 2014, hearing.  Defense counsel also had attempted to preserve the right to object later to admission of Exhibit 2, appellant's signed Release of Conditions Form reflecting appellant's awareness of that July 1, 2014, obligation.  The discussion between the trial court and defense counsel quoted at the end of part I. focused on Exhibit 2.  Without question, however, the trial court's reasoning was broad enough to cover its admission of both exhibits.  (As we also noted above, there had been no objection to admission of Exhibit 3 evidencing the bench warrant for appellant's arrest.)

[7]   In arguing that the courtroom clerk's qualification as an "expert" was required here, appellant relies on our decision in *Motorola v. Murray*, 147 A.3d 751 (D.C. 2016) (en banc).  In *Motorola*, following the Supreme Court's ruling in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), we abrogated the *Dyas/Frye* test and adopted Fed. R. Evid. 702 for Testimony by Expert

(continued . . .)

understood Crowley to have done no more than read public records into the trial record, which the court said it could do itself, without any expert, interpretive help from Crowley.

We do not assume the trial court was saying that, as factfinder, it could simply take judicial notice of the government's exhibits, without more, to assess appellant's guilt.[8] The government itself recognizes that, for admission of court records in evidence under the public record exception to the hearsay rule, the government must establish a foundation — a predicate — for admission of such exhibits. This requires testimony that: (1) authenticates each document as "an official record" of the trial court, (2) proves that the "facts stated in the document are within the personal knowledge and observation of the recording official," and (3) establishes that "the document is prepared pursuant to a duty imposed by law or

_____

(. . . continued)

Witnesses. As we explain below, however, Fed. R. Evid. 702 is inapplicable here. 147 A.3d at 759-59.

[8] This is not a case in which a trial court, for example, judicially notices a court record to confirm an unassailable fact, such as a defendant's release status, for purposes of imposing sentence. *See, e.g.*, *Daniels v. United States*, 33 A.3d 324, 330 (D.C. 2011).

implied by the nature of the office"[9] — criteria we have compressed to require the "offering witness be able to identify the record as authentic and as made in the ordinary course of business."[10] Thus, in rejecting the need for expert testimony to satisfy these foundational criteria, the trial court's "I-can-read-it" ruling implicitly leaves us with two threshold questions: Contrary to the trial court's ruling, was "expert testimony" required to provide the foundation necessary to justify admission of government exhibits 1 and 2? If not, was the courtroom clerk's testimony sufficient for that purpose?

Not long ago, in affirming a BRA conviction, this court recognized that an unchallenged, unidentified witness (likely the trial court courtroom clerk) testified

---

[9] *Goldsberry v. United States*, 598 A.2d 376, 378 (D.C. 1991) (quoting *In re D.M.C.*, 503 A.2d 1280, 1283-84 (D.C. 1986)).

[10] *Id.* at 379 (quoting *United States v. Newman*, 468 F.2d 791, 795-56 (5th Cir. 1972), *cert. denied*, 411 U.S. 905 (1973)). We justified this shorthand interpretation by concluding that the "official who prepares a document" about which the courtroom clerk testifies "need not testify to satisfy the personal knowledge requirement of the public record exception . . . because the recorder's official duty to make an accurate statement in itself supplies a sufficient indication of trustworthiness." *Id.* Implicitly, therefore, this same rationale applies to satisfy the "pursuant-to-a-duty" requirement because the official who prepares an authentic court document necessarily carries out a duty "imposed by law or implied by the nature of the office," *id.* at 378, and thus does so routinely, in the "ordinary course" of the court's business *id.* at 379.

as an "expert" when explaining "standard courtroom practice."[11] Years earlier, we affirmed another BRA conviction after recognizing unchallenged "expert" testimony by a trial court employee laying the foundation for admission of government exhibits challenged on appeal for violating the Confrontation Clause of the Sixth Amendment.[12] Still earlier, in affirming another BRA conviction for "willfully failing to appear," we likewise noted the trial court's qualification of a courtroom clerk as an "expert" whose testimony supplied the foundation necessary to support authentication of court documents under the public record exception to the hearsay rule.[13]

---

[11] *Wilkins v. United States*, 137 A.3d 975, 978 (D.C. 2016) ("expert" witness testified that courtroom clerks "will orally notify" defendant of "date and time" of next court appearance and of "consequences for failing to appear," and will require defendant to sign "Notice to Return to Court containing the same information" and then give defendant "a copy of the signed notice").

[12] *Jackson v. United States*, 924 A.2d 1016, 1018, 1019 (D.C. 2007) (trial court employee was "qualified without objection as an expert in Superior Court courtroom procedure . . . [and was] called to the stand to lay a foundation for the admission of the government exhibits" in BRA prosecution).

[13] *Goldsberry*, 598 A.2d at 377-78 (in BRA case, court employee with eight years of experience as a courtroom clerk was "qualified as an expert in courtroom procedures" and testified that the "seal" on the "challenged docket entries and Notice to Return" indicated a "true copy of the court proceedings" in which a defendant is informed of "the next scheduled appearance date" and of "the penalties for failing to appear"; is then required to sign a copy of the notice to

(continued . . .)

In none of these cases, however, did we review the need for expert testimony; nor have other cases suggested, let alone held, that a courtroom clerk must be qualified as an "expert" before testifying about trial court procedures in failure-to-appear or other cases.[14]

To be sure, testimony about trial court procedures — what they are and how they work — may include a measure of interpretation (and thus "opinion").[15] Even

_____

(. . . continued)
appear; and, finally, is informed that a bench warrant would issue for his arrest if he did not appear as required).

[14] *See Gilliam v. United States*, 46 A.3d 360, 371 (D.C. 2012) (trial court courtroom clerk testified without objection in BRA prosecution "about general courtroom procedures," including among other things notice to defendant of "the penalties for failure to appear"); *Brown v. United States*, 718 A.2d 95, 98 (D.C. 1998) (trial court courtroom clerk testified without objection about Drug Court procedure in BRA prosecution for failure to appear for drug treatment program, including that "defendants are notified orally and in writing of future court dates and of the consequences of failure to appear"); *see also Hill v. United States*, 541 A.2d 1285, 1288 (D.C. 1988) (police officer held "competent to testify about the general practice of the police department of which he himself was a member. So long as his testimony was based on his personal knowledge, it would not even be 'expert' testimony.").

[15] In this case, for example, clerk Crowley testified that she could not tell from the court's copy of the Release of Conditions Form whether appellant had

(continued . . .)

so, a courtroom clerk's testimony about court procedures is premised on the clerk's own personal knowledge and experience. Thus, that testimony, even when reflecting opinion, does not presuppose — indeed, would not ordinarily be informed by — the kind of "scientific, technical, or other specialized knowledge," derived from sources beyond one's experience, that characterize an expert under Federal Rule of Evidence 702[16] adopted in *Motorola.*[17] We conclude, accordingly, that testimony about trial court procedures by a courtroom clerk is characterized more properly as "lay opinion," governed by Federal Rule of Evidence 701,[18]

_____

(. . . continued)

also received a copy, but she opined that, because a release form has three carbon copies, appellant "would have gotten" one of them.

[16] Rule 702, *Testimony by Expert Witnesses*, provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

[17] See *supra* note 7.

[18] Rule 701, *Opinion Testimony by Lay Witnesses*, provides: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702."

adopted in our *King* decision[19] — a  characterization appellant does not dispute if qualification of an expert is not required.

Quoting federal case law, we have acknowledged that the "line between lay opinion testimony under Rule 701 and expert testimony under Rule 702 is a fine one," not always "easy to draw."[20]  However, we agree with the government that, in this case, clerk Crowley's testimony was not that of an expert based on "special training or scientific or other specialized professional knowledge" normally not "accessible to an average person."[21]  Rather, as explained in *King*, her testimony was premised on knowledge gained from her "personal experiences and observations" as a courtroom clerk, including "observations of human conduct in

---

[19]  *King v. United States*, 74 A.3d 678, 681-83 (D.C. 2013) (opinions of police officers about the meaning of particular "street lingo," derived from interactions "with youth in the D.C. streets," were admissible as lay testimony in carjacking trial pursuant to "process of reasoning approach" adopted from Second Circuit's decision interpreting Fed. R. Evid. 701 in *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)).

[20]  *Id.* at 681 n.14 (internal quotation marks omitted).

[21]  *Id.* at 683.

[her] every day work," communicated to the jury with "reasoning processes familiar to the average person in everyday life."[22]

The question then becomes: How is this Rule 701 lay opinion to be applied here? More particularly, on the trial record, did clerk Crowley's testimony provide the required foundation for admission of the government exhibits 1 and 2 in evidence?[23]

## B. Foundation for Lay Opinion Testimony: Federal Rule of Evidence 701
### 1. General Courtroom Procedures

As observed earlier, before determining whether clerk Crowley's testimony about trial court procedures was admissible under Rule 701,[24] *Goldsberry* requires us to evaluate whether that testimony satisfied the public record exception to the

---

[22] *Id.* at 682-83.

[23] Although appellant agrees that, if expert testimony is not required, Rule 701 applies, he then argues, on the facts, that Rule 701 fails to justify admission of Crowley's lay opinion testimony.

[24] See *supra* note 18 subsections (a) and (b).

hearsay rule, requiring demonstration that clerk Crowley was "able to identify the record as authentic and as made in the ordinary course of business."[25]

As the foundation for admitting in evidence certified copies of the docket entry, the Release of Conditions form, and the bench warrant (government exhibits 1, 2, and 3), Crowley first explained her overall duties as clerk: she "pretty much manage[s] the courtroom"; prints and posts the "courtroom calendar" each day; prepares the paperwork for each defendant's case; and adds the "docketing entries," including "what occurred" when the case was called, the defendant's "release status" pending trial, and a notice — which the defendant signs — specifying when the defendant must return to court and adding the "penalties" for failing to so. Clerk Crowley adds an "oral warning" that "explain[s] the penalties," including a bench warrant for the defendant's arrest. She also notes in the court record when a defendant "does not appear after his or her name is called." Importantly, Crowley generalized her testimony; she confirmed that "all of the courtroom clerks here in D.C. Superior Court follow a similar procedure each morning."

---

[25] *Goldsberry*, 598 A.2d at 379; see *supra* notes 9 & 10 and accompanying text.

## 2. Evidence at Trial

After explaining the trial court's general procedures, Crowley identified the government's three exhibits, testifying that each was a sealed, certified copy. In answering the prosecutor's questions, Crowley confirmed docket entries indicating that appellant was present in court on May 29, 2014, the date of arrest; had been charged with a criminal offense in case number 014-CMD-9383 (Exhibit 1); had signed a "release of conditions form" notifying him that he must return to court on July 1, 2014 (Exhibit 2); and then failed to appear on that date, as required, following which a bench warrant had been issued for his arrest (Exhibit 3).

On cross-examination, Crowley acknowledged that appellant's failure to appear on July 1, 2014, occurred before she was "working at the courthouse," and thus that her testimony had been based exclusively on what she had seen "in the docket."

Crowley concluded her testimony by responding on redirect that she had worked at the trial court for almost three years (having mentioned earlier that she

had served "[m]ore than ten judges"). She looks at court calendars "[e]very day" and feels "one hundred percent comfortable" when "reading and interpreting, understanding what the court calendars mean."

This court's decisions cited earlier[26] — especially the remarkably similar testimony in *Goldsberry*[27] — make clear that Crowley's testimony (if otherwise qualified) was foundation evidence sufficient for admission of government Exhibits 1 and 2, namely, testimony supporting the charge that appellant had willfully failed to appear in court after release pending trial. Of particular importance, Crowley made clear that appellant was on notice of the next scheduled hearing date that he missed, as he had signed a copy of the notice specifying that

[26] See *supra* notes 11-14.

[27] 598 A.2d at 378 ("[The courtroom clerk] testified that normal procedures require all parties to identify themselves at a hearing. He then testified that either the courtroom clerk or the judge informs the defendant, at the conclusion of the hearing, of the defendant's next scheduled appearance date and of the penalties for failing to appear. [The courtroom clerk] further testified that the defendant is required to sign a written notice reflecting that the defendant has received notice of the next appearance date. [The clerk] added that normally the defendant signs the notice in the presence of the courtroom clerk. [The clerk] also testified that if a defendant does not appear at a scheduled hearing, the court will issue a bench warrant for the defendant's arrest and a record entry will reflect that fact. [The clerk] then testified that, to the best of his knowledge, the March 3 and May 15 docket entries had been made in accordance with established courtroom procedures.").

date and, based on the described courtroom practice, would have simultaneously received a copy of it.

In support of admitting this testimony, we have agreed with the trial court that Crowley need not have been qualified as an expert. Based on our decision in *King*, Crowley's testimony, if qualified for admission in evidence, would come in as a lay opinion under Federal Rule of Evidence 701, exempted from the hearsay rule by the public record exception, as explained in *Goldsberry*.[28] We therefore turn to appellant's next contention: that Crowley's lay opinion was nonetheless inadmissible under Rule 701 because her opinion failed to meet the predicate requirement of Federal Rule of Evidence 406, as understood from our *Smith* decision.[29]

## A. Federal Rule of Evidence 406

---

[28] See *supra* notes 10 and 11 and accompanying text.

[29] *Smith v. United States*, 583 A.2d 975 (D.C. 1990).

As noted earlier, we review for plain error because appellant failed to object to the trial court's allowance of clerk Crowley's testimony as proper foundation for admission of the government's exhibits. Rule 406 provides, where relevant, that "[e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Adopting Rule 406 in *Smith*,[30] we rejected, for lack of foundation, a courtroom clerk's testimony about the general practice of courtroom clerks when judges change scheduled courtrooms during cases of failure to appear. Although we concluded that Rule 406 was applicable to the "routine" of a court (a qualifying "organization"), we reversed appellant's conviction for failing to appear in the reassigned courtroom because the testifying clerk lacked "personal knowledge"[31] of "what other courtroom clerks normally did when judges changed courtrooms";[32] that is, the clerk did not resolve whether there was a uniform routine that, under the circumstances, would have directed appellant to the proper courtroom. By concluding that the testifying clerk lacked the requisite "personal knowledge," however, we "did not expressly challenge [the

---

[30] *Id.* at 983.

[31] *Id.* at 983.

[32] *Id.* at 984-85.

clerk's] competence to testify about the general practice of courtroom clerks";[33] we concluded, rather, that the witness did not demonstrate personal knowledge of a general practice.[34] In the present case, however, clerk Crowley did testify about the trial court's general practice — its "routine" — in trying BRA cases, including proof of each element of the crime, as evidenced by the court documents proffered by the prosecutor as government Exhibits 1, 2, and 3.

Appellant would have us reject Crowley's testimony because, having joined the trial court staff in April 2016, she "did not have personal knowledge of the general practices and customs of courtroom clerks in 2014," when appellant failed to return to court on July 1. Appellant, however, failed to object on this ground at trial or press the point at closing argument.

---

[33] *Id.* at 984.

[34] *Accord Bolan v. United States*, 587 A.2d 458, 459-60 (D.C. 1991) (evidence from courtroom clerk who testified that "all cases in a given calendar are posted in various places in the courthouse" — but who "did not know where the calendar was posted" on the date appellant was required to appear — provided insufficient foundation for the government to demonstrate that appellant, who failed to appear, had the required notice of a courtroom change) (relying on *Smith*, 583 A.2d at 984).

We cannot find plain error, let alone error affecting appellant's substantial rights.[35] Presumably the government had the burden of persuasion that the trial court procedures reflected in the docket at time of trial (April 2016) were congruous with the situation when appellant failed to appear in court (July 2014). However, Ms. Crowley's testimony — based exclusively on what she had seen "in the docket" from 2014 — was remarkably similar to the testimony about courtroom procedures by the courtroom clerk in *Goldsberry* many years earlier.[36] Furthermore, Crowley made clear that the court procedures she had described were virtually universal, for she testified that "all of the courtroom clerks here in the trial court follow a similar procedure each morning." We believe that this evidence was sufficient proof that Ms. Crowley was apprised of the docket evidence and procedures from 2014; such time-honored procedures are not changed regularly or without a trial judge's awareness (of which there was no evidence here).

The burden of producing evidence to the contrary thus shifted to appellant. However, he has proffered no basis for believing that trial court procedures, let alone the court docket, had changed between mid-2014 and the spring of 2016

---

[35] See *supra* note 5.

[36] See *supra* note 25.

when Ms. Crowley first reported for work. Appellant's contentions embracing Rules 406 and 701 accordingly fail because, unlike the courtroom clerks who testified in *Smith* and *Bolan*,[37] clerk Crowley testified with the level of "personal knowledge" required under both rules.[38]

## III. Sufficiency of the Evidence

To find the evidence sufficient to support a criminal conviction, we decide whether, "after viewing it in the light most favorable to the [government], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[39] Following a bench trial, this court will not reverse a conviction unless appellant "has established that the trial court's factual findings are 'plainly wrong,' or 'without evidence to support them.'"[40] "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the

---

[37] See *supra* note 32.

[38] See text accompanying *supra* notes 29-31 (Rule 406) and notes 19-20 (Rule 701).

[39] *Smith v. United States*, 55 A.3d 884, 887 (D.C. 2012).

[40] *Jones v. United States*, 67 A.3d 547, 549 (D.C. 2013).

entire evidence is left with the definite and firm conviction that a mistake has been committed." [41]   Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. [42]

To prove a violation of the Bail Reform Act, the government must prove that appellant:  (1) had been released pending further criminal proceedings, (2) was required to appear in court on a specific date, (3) failed to appear, and (4) did so willfully. [43]   In this case, viewed (as we must) in the light most favorable to the government, there was sufficient evidence for appellant's conviction.

In her comprehensive testimony summarized earlier, clerk Crowley testified, among other details, that docketing entries confirmed appellant's presence in court on the date of his arrest, May 29, 2014, charged with a criminal offense in case number 2014-CMD 9383 (Exhibit 1); that after arraignment he had signed a "release of conditions form" notifying him of his obligation to return to court for a

---

[41] *United States v. United States Gypsum Co.*, 333 U.S. 364, 394-395 (1948) (internal quotation marks omitted).

[42] *Anderson v. City of Bessemer*, 470 U.S. 564, 574 (1985).

[43] *See Jackson*, 924 A.2d at 1018.

status hearing on July 1, 2014 (Exhibit 2); that he had failed to appear on that date; and that a bench warrant thereupon issued for his arrest (Exhibit 3). This testimonial and documentary evidence was sufficient to satisfy the first three elements of the crime.

Finally, the BRA statute provides that "[a]ny failure to appear after notice of the appearance date shall be prima facie evidence that such failure to appear is willful,"[44] essentially a presumption that appellant made no serious effort to rebut. In closing, defense counsel merely argued: "As a fact finder, I'd submit that they have given you no evidence as to willfulness and therefore the court should acquit Mr. Johnson." The trial court, however, perceived "no contrary evidence to override" the presumption that appellant's failure to return to court was "willful," ruled that the government had "met its burden," and found appellant "guilty of the BRA." There was no clear error and thus the judgment of conviction must be affirmed.

*So ordered.*

---

[44] D.C. Code § 23-1327(b).